[L. A. No. 4039. Department One.—June 25, 1917.]

## SAN DIEGO CONSTRUCTION COMPANY, Appellant, v. MARY S. MANNIX, Respondent.

VENDOR AND VENDEE—DEFAULT OF VENDOR—RIGHT OF VENDEE.—
Where performance of a contract to convey real estate is due, and the vendor refuses or fails to perform on request, the vendee may treat such breach as an abandonment and termination of the contract, and may then abandon it himself and sue at law to recover the amount he has paid in an action for money had and received.

ID.—BREACH OF SEVERABLE CONTRACT—RECOVERY OF MONEY PAID.—
Where a contract of sale is divisible and separable, so that a full performance of one part may be made by both parties without affecting the subsequent performance, or right of performance, as to the remainder, and a breach of that character occurs as to a part thus severable, the purchaser may treat such part as abandoned and recover what he has paid thereon in an action for money had and received.

ID.—CONTRACT FOR PURCHASE OF TRACT OF LAND—RELEASE OF LOTS IN ADVANCE OF FILING OF SUBDIVISION MAP—EVIDENCE.—In an action to recover amounts paid on the purchase price of a tract of land, evidence introduced by the plaintiff to the effect that it bought the land with the intention of subdividing it into small lots and selling such lots to others and that such purpose was stated to the vendor at the time of the purchase, is admissible, on the theory that the contract was ambiguous as to whether the purchaser was entitled to deeds when paid for under the release clause in the contract, before the filing of the subdivision map for record.

ID.—TIME OF RELEASE—CONSTRUCTION OF CONTRACT AND ACCOMPANYING DECLARATION OF TRUST.—The provision in a declaration of trust referring to a contract for the sale of a tract of land and providing the means and manner of performance, that in the event the premises were subdivided by the beneficiary in the exercise of its option so to do, the payee would release lots paid for on certain terms, does not declare that the purchaser should not be entitled to a deed to lots for what payments have been made prior to the filing of the subdivision map, provided for in the contract and trust agreement, since the time of subdivision is unimportant to the vendor.

ID.—APPLICATION OF PAYMENTS—CONSTRUCTION OF CONTRACT.—Where notes are given by the vendee under a contract for the purchase of a tract of land, the provision in the contract that the payments should first be made upon the note next maturing does not make the right to a deed to a lot dependent on payments of installments prior to maturity, but should be construed as a mere directory pro-

vision for the application of payments and not as a statement of conditions which would deprive the buyer of the benefits of a deed for a lot after he had paid the specified amount therefor.

ID.— CONTRACTS — CONDITION PRECEDENT — CONSTRUCTION.—Courts are disinclined to construe the stipulations of a contract as conditions precedent, unless compelled by the language of the contract plainly expressed, and particularly so when the result would be to work a forfeiture.

ID.—RELEASE OF LOTS—DEMAND UPON TRUSTEE SUFFICIENT.—Where a contract and trust declaration concerning the sale of a tract of land provided that upon payment of a certain amount to the trustee "the payee will release from the lien of the indebtedness due to him" one of the lots. and that "said trustee is by this instrument authorized upon the payment to it for the account and to the credit of said payee of the sum of $450 per lot, to convey the lots so released to the said beneficiary or order," no necessity exists for a special demand for a release upon the vendor, and a demand upon the trustee is sufficient.

ID.—RESCISSION—DEMAND—WHEN UNNECESSARY.—Where a vendor has refused to convey on demand after full payment of the purchase price, it is not necessary to make any formal demand for rescission other than the bringing of the action for the purchase money paid, or to make any offer of restoration, since there is nothing to restore.

ID.—ASSIGNMENT OF CONTRACT—RIGHTS OF ASSIGNEE.—The assignee of a contract for the sale of land can claim no greater rights against the purchaser under the contract than were available to the assignor, where the contract is assigned without valuable consideration.

APPEAL from a judgment of the Superior Court of San Diego County, and from an order denying a new trial.    T. L. Lewis, Judge.

The facts are stated in the opinion of the court.

Tyrrell, Abrahams & Brown, for Appellant.

E. T. Lannon, John B. Mannix, and E. S. Torrance, for Respondent.

SHAW, J.—The plaintiff appeals from the judgment in favor of the defendant and from an order denying its motion for a new trial.

The complaint asks for the recovery of $32,502.83, alleged to have been paid by the plaintiff as a part of the purchase price of a tract of land sold by John B. Mannix to the plain-

tiff. After the execution of the contract of sale, John B. Mannix made a gift to the defendant (his wife) of all his rights under the contract and in the real property which was the subject thereof. The decision of the case depends upon the meaning and effect of said contract. It will be necessary to state the provisions of the contract at some length.

The agreement for the sale between Mannix and the plaintiff consisted of two documents, the first being a contract of sale signed by Mannix and the plaintiff and the second a declaration of trust executed by Mannix and the plaintiff and Union Title and Trust Company, the latter being named as trustee. The contract of sale was executed December 19, 1912, and the declaration of trust on January 8, 1913. The declaration of trust referred to the contract of sale and specified the means and the manner in which the same should be performed. The two are to be construed as parts of one contract, the later superseding the earlier one wherever it is inconsistent therewith.

By the contract of sale John B. Mannix agreed to sell to the plaintiff the tract of land in San Diego at the price of two thousand dollars per acre. The tract contained something over forty-six acres. A survey showed that the total purchase price was $92,636. Of the price, one thousand dollars was paid on the date of this instrument. A certificate was to be made by the Union Title and Trust Company showing title to the property vested in Mannix free of encumbrances. A survey showing the acreage was to be made, after which Mannix was to execute a deed to the Union Title and Trust Company, vesting in said company the title to the property in trust for the performance of the agreement. Thereupon, eleven thousand five hundred dollars more was to be paid on the price and a trust agreement was to be executed by all of said parties. The remainder of the price was to be paid in installments, twelve thousand five hundred dollars within six months from the delivery of said deed and the balance in four equal payments in one, two, three, and four years, respectively. For all these payments promissory notes to Mannix were to be given by the plaintiff. It further provided that the plaintiff should have the right to subdivide the property into building lots and that the Trust Company, as holder of the legal title, should execute the plat thereof, so as to entitle it to be recorded in the office of the county re-

corder. The following is the clause of the agreement the meaning of which is disputed:

"It is further agreed, that said second party shall be entitled to have said lots released from such trust, and to a conveyance to them, on payment of four hundred and fifty dollars per lot for lots not to exceed 50 feet by 125 feet in size. All payments made for releases of such lots shall be credited on the said notes of said second party in the order of their maturity."

The declaration of trust recited that the preliminary payments amounting to twelve thousand five hundred dollars had been made, that the total price was $92,636, leaving $80,136 unpaid, that the Trust Company had accepted the deed from Mannix conveying to it the premises. It provided that of the remainder of the purchase price there should be paid twelve thousand five hundred dollars "on or before July 8, 1913," $16,909, "on or before January 8, 1914," and the balance in other installments at other times not material to this case. For each of these installments promissory notes were executed by the plaintiff. With reference to conveyances for lots, the declaration provided as follows:

"It being also understood and agreed that in the event said premises are subdivided by the beneficiary in exercise of its option to so do, hereinafter contained, then, said payee will release from the lien of the indebtedness due to him as above recited upon the payment to the said Union Title & Trust Company for his account, of the sum of four hundred fifty dollars per lot, for lots not exceeding fifty feet front by one hundred twenty-five feet depth in size; and the said trustee is by this instrument authorized upon the payment to it for the account and to the credit of said payee, of the sum of four hundred fifty dollars per lot, to convey the lots so released to the said beneficiary, or order. All payments made pursuant to the terms of this paragraph shall apply to and be a credit upon said principal indebtedness due said payee as above set forth, application first being made upon the promissory note first next maturing."

The clause referring to the right to subdivide was as follows:

"That said property may be subdivided and improved by the said beneficiary in such manner as it may hereafter decide upon; that a map of the survey of said new subdivision be

prepared by the said beneficiary, executed and acknowledged by the said trustee and shall be filed for record in the office of the county recorder of said San Diego county; the said trustee being hereby authorized to sign and acknowledge such map as proprietor and to dedicate to public use all of the streets and alleys shown on said map, it being understood and agreed that the land shall be subdivided into lots not *less* than fifty feet in width, and where practicable, one hundred and twenty-five feet in depth.''

The word ''*less*'' in the last quotation is obviously a clerical error. All the other portions of the contract and declaration show that the word ''more,'' or ''exceeding,'' was intended instead of ''*less*,'' and the contract should be so construed.

On July 3, 1913, after the transfer from John B. Mannix to the defendant, she and the plaintiff executed an agreement whereby the time for making the July payment of twelve thousand five hundred dollars was extended. It was provided therein that seven thousand dollars should be paid on July 8, 1913, $1,654.08 on August 1, 1913, and $6,250 on October 8, 1913. These three payments were duly made, the last payment of $6,250 being made on October 1, 1913.

The pleadings admit that the property was subdivided into lots and blocks and a map thereof completed on August 3, 1913, and that the same was approved by the city engineer on October 7, 1913, but that it was not filed for record until December 5, 1913, some two months after the last payment was made on the installment of July 8, 1913.

At the time of the making of the aforesaid payments nothing was said concerning a conveyance or release of any lot or lots in consideration thereof. Afterward, however, on December 19, 1913, the plaintiff made a demand in writing upon the Trust Company for the conveyance by it to the plaintiff of certain lots, twenty-seven in number, of the said subdivision. It was not disputed at the trial that these lots did not exceed the size mentioned in the agreement. As the record stands, we do not think the respondent can be permitted now to urge the objection that the size was not shown by the evidence, as she endeavored to do in her oral argument. The Trust Company did not execute any conveyance in compliance with the demand, or any conveyance whatever.

The time for paying the installment of January 8, 1914, was extended at the request of the plaintiff for a period of

twenty days, but the plaintiff failed to pay it. The trust deed empowered the trustee, after such failure, to sell the property to pay the purchase price remaining unpaid and thereby to foreclose all interest of the plaintiff in the property. In pursuance of this power, on March 4, 1914, the trustee sold the property to the defendant for the exact sum remaining due for the principal, interest, and costs upon the agreement. Shortly thereafter the plaintiff began this action to recover of the defendant the amounts which it had paid upon the purchase price of the property.

At the time of demanding the conveyance from the trustee in December, 1913, the plaintiff made no demand of the defendant for the release of the lots. The defendant was immediately informed of such demand on the company and from the evidence and from her subsequent conduct it must be assumed that she acquiesced in the failure or refusal of the Trust Company to make the conveyance.

The findings declare that the contract of sale and trust agreement did not provide that for each $450 paid upon the $80,136 then remaining to be paid on the purchase price and evidenced by the notes to be given therefor, Mannix would release and cause to be conveyed to plaintiff a lot of the size stated. The court also found that the payments made as aforesaid in satisfaction of the installment of July, 1913, were "not credited upon the principal of the indebtedness as set forth in the contract and declaration of trust; but, on the contrary, the payment of said sum of twelve thousand five hundred dollars was made in satisfaction and payment of the promissory note for that amount due on or before July 8, 1913." It also found, in effect, that the plaintiff did not at any time demand of the defendant any release, or releases of lots on account of said payments, otherwise than by the demand upon the Trust Company for a deed for certain lots, as aforesaid. Its conclusion was that the failure to execute a deed in compliance with the said demand was not a breach of the agreement between John B. Mannix and the plaintiff, and that the plaintiff was not entitled to recover any part of the money it had paid thereon.

The general rule, where performance of a contract to convey is due and the vendor refuses to perform it, or fails to perform on being duly requested to do so, is that the vendee may, if he chooses, treat such breach as an abandonment and

termination of the contract and may then abandon it himself, and, ''the contract having thus come to an end, he may sue at law to recover what he has paid, in an action for money had and received; for, the contract being at an end, the vendor holds money of the vendee to which he has no right, and to repay which, therefore, the law implies his promise.'' (*Glock* v. *Howard*, 123 Cal. 10, [69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713]; *Alderson* v. *Houston*, 154 Cal. 12, [96 Pac. 884]; 3 Elliott on Contracts, sec. 2095; 1 Sugden on Vendors, p. 357.) Where the contract is divisible and separable, so that a full performance of one part may be made by both parties without affecting the subsequent performance, or right of performance, as to the remainder, and a breach of that character occurs as to a part thus separable, the rule above stated must be also applicable with regard to the money paid by the vendee upon such separable part. The respondent contends that the facts do not bring this case within the rule, and the court below so decided.

The court below erred in its finding, or conclusion, that the payment of the July installment of twelve thousand five hundred dollars was not credited upon the principal indebtedness. Credit therefor may not have been formally entered anywhere, except by indorsement on the note for that installment, but that was, in point of law, a credit upon the principal of the indebtedness of the plaintiff upon the agreement of sale.

In support of the finding, or conclusion, that the contract did not provide for a release and deed of a lot for each $450, so paid on the remaining part of the price, the attorney for the defendant contends, as we understand him, that the meaning of the writings on this point is, first, that no payment made on the price prior to the filing of the subdivision map for record would entitle the plaintiff to such release or deed; second, that such release and deed were demandable only when a payment was made in advance of the maturity of one of the installments and when all installments previously maturing had been paid, and that they were not demandable upon a belated payment of any installment, or on account of installments already paid without a concurrent demand for such deed and release; and third, that a request for such release and deed must be concurrent with the pay-

·ment on account of which it is claimed, or the right thereto is lost.

Upon the theory that the writings might be deemed ambiguous on these points, evidence was introduced by the plaintiff to the effect that it bought the land with the intention of subdividing it into small lots and of selling such lots to others, that this purpose was stated to John B. Mannix at the time of the purchase, and that the clauses above quoted were inserted in the contract of sale and trust agreement in order to aid in carrying out the plan. Assuming that there is such ambiguity, the evidence would be competent and admissible to explain it and show the true meaning. The conversations at the time were, of course, not admissible to prove that there were terms of the contract different from those written therein. The evidence was not given for such purpose. And it may be added that the fact that these clauses were inserted for the purpose of facilitating the subsequent sale and conveyance of the lots of the proposed subdivision in fee to other persons is shown upon the face of the contract, without aid from extrinsic evidence.

There is no provision of the contract of sale or trust agreement declaring that the buyer shall not be entitled to a deed for payments made before the filing of the subdivision map. Respondent argues that the phrase, "*in the event* said premises are subdivided by the beneficiary in the exercise of its option so to do, then, said payee will release," etc., in the paragraph of the trust agreement above quoted, relating to such deeds, was intended to express the idea that payments made before the event of the making of the subdivision would not be within the operation of that paragraph and would afford no basis for a claim made, either at the time of such payment or afterward, to have a deed made in accordance with its provisions; that the provision should apply only to payments made after that event. This is not the natural meaning of the words, and it is contrary to the object and purpose of the provision for such deeds. The time of the making of the subdivision was not important to the seller. It would necessarily be a condition precedent to the selection of a lot by the buyer upon the price of which a payment should be applied. It is in this sense only that the clause purports to make the right conditional. It is the right to make the selection of a lot that depends upon the previous making of

the subdivision necessary to the identification of the lot selected, and not the right to have the money applied as payment for such lot when selected.

There is nothing in either of the writings to the effect that a deed could not be obtained unless it was demanded at the time the money was paid or that a failure to make such concurrent demand should operate as a waiver of the right to a deed.

The contention that the contract gives no right to a deed for one of the lots, except on account of payments on one of the installments prior to its maturity, is founded upon the provision of the same paragraph that all payments made pursuant to the terms of the paragraph should be a credit upon the principal indebtedness, "application first being made upon the promissory note next maturing." This clearly does not declare the proposition contended for, but it is argued that such is the necessary implication therefrom, because if a payment on account whereof a lot is selected must be applied on the next maturing note, then it would follow that such payment must be made prior to such maturity, and must be made expressly upon that note and not upon a note already matured. This might be the effect of the language if it were stated as a condition precedent to the right to have the money applied as the purchase money of the lot. But it does not purport to declare a condition precedent, nor does it refer to the effect of the payment as conferring the right to claim a deed, or to state a condition of that right. "Courts are disinclined to construe the stipulations of a contract as conditions precedent, unless compelled by the language of the contract plainly expressed" (*Front St. etc. Co.* v. *Butler,* 50 Cal. 577; *Deacon* v. *Blodget,* 111 Cal. 416, 418, [44 Pac. 159],) and particularly so when the result would be to work a forfeiture. (*Antonelle* v. *Kennedy & Shaw Lumber Co.,* 140 Cal. 309, 315, [73 Pac. 966].) If the proposition contended for had been in the minds of the parties, it is difficult to believe that they would not have found clearer language in which to express it. The above-quoted phrase is reasonably susceptible of a different interpretation. The parties must be supposed to have made the contract in the belief that its terms would be fulfilled, that the payments stipulated would be made "on or before" the times provided. The clause in question is couched in apt words, if it were intended solely to

provide for the application of payments made during the interval between the maturity of two installments and upon the presumption that the prior installments had been paid when due. If it was intended to express the condition contended for, or any ·idea other than that of declaring how intermediate payments should be applied, it is awkward and indefinite to the utmost degree. It should be construed as a mere directory provision for the application of payments and not as a statement of conditions which would deprive the buyer of the benefits of a deed for a lot after he had paid the specified amount therefor.

We find no language that can be· construed to declare that a deed or release could not be demanded on account of a payment made after maturity.

The respondent further contends that, in order to lay a legal foundation for this action, it was necessary for the buyer to make a formal and personal demand upon the defendant for a release of the lot selected, and that as the only demand made was the request for a deed made to the Trust Company, the plaintiff cannot prevail. The contract provides that the buyer "shall be entitled to have said lots released from such trust, and to a conveyance of them" on payment of the stipulated sum. The declaration of trust provides that upon the payment of $450 per lot to the Trust Company, "said payee will release from the lien of the indebtedness due to him" one of the lots, and that "said trustee is *by this instrument* authorized upon the payment to it for the account and to the credit of said payee, of the sum of $450 per lot, to convey the lots so released to the said beneficiary, or order." The payment of each $450 was a complete settlement of the price for one lot, and entitled the buyer to a deed therefor. The deed of the Trust Company·for such lot, under such circumstances, would vest title in the buyer free from any lien for the price. There is nothing in either writing which declares that a formal release should be executed by the seller, or that anything more than a deed was to be necessary to accomplish the release referred to. The only thing necessary to vest in the buyer the right to a deed for a lot was the payment of $450 to the Trust Company. No other conditions were to be complied with by the buyer and no ground would then exist on which the seller could base a refusal. There was, therefore, no reason for a requirement

that a special demand for a release should be made upon the seller or his assignee, in addition to the demand upon the Trust Company, the agent of the seller, vested with the title and empowered to convey it when a lot was released by such payment. In view of these conditions it might reasonably be said that no demand for a release was essential, other than the designation of a lot to the agent and the request that it execute the deed therefor. But however this may be, it is clear that under the circumstances existing when the action was begun a further demand was unnecessary. "The law does not require the performance of a useless act, and when it is made to appear by the defendant's own act that the demand would have been refused, then they cannot be heard to object that no demand was made." (*Remy* v. *Olds,* 88 Cal. 542, [26 Pac. 355]; *Parrott* v. *Byers,* 40 Cal. 623; *Wood* v. *McDonald,* 66 Cal. 546, [6 Pac. 452].) The defendant had received the payments and knew the amounts paid. She was informed of the selection of the lots and demand for the deed immediately after it occurred. Thereafter, notwithstanding such full payment for the lots selected, she proceeded to have the entire property sold by the trustee under the power of sale in the trust agreement, and she became the purchaser thereof for the full amount of the balance due for principal, interest, and costs. And in this action she denies the right of the plaintiff to a deed on account of the payments so made, whether demanded or not, and clearly shows that she would have denied his right and would have refused to make any release on account thereof. The demand for a release was therefore unnecessary.

That no formal demand for a rescission, other than the bringing of the action for the purchase money paid, is necessary, where the vendor has refused to convey on demand, after full payment of the price, and that no offer to restore was required where there was nothing to restore, as is the case here, are well-settled propositions. (*Chatfield* v. *Williams,* 85 Cal. 521, [24 Pac. 839]; *Thomas* v. *Pacific etc. Co.,* 115 Cal. 142, [46 Pac. 899]; *Carter* v. *Fox,* 11 Cal. App. 71, [103 Pac. 910].)

The defendant received the interest of John B. Mannix by assignment from him without a valuable consideration. She can claim no greater rights against the plaintiff, under the contract, than were available to her assignor. The sum of

$450 per lot for the lots for which a deed was demanded is the limit of the recovery to which the plaintiff would be entitled. The cash payment of twelve thousand five hundred dollars at the time of entering into the contract was a general payment on the price of the tract as an entirety, required in order to provide a margin sufficient to safeguard the seller against loss from the conveyance of one or more lots upon the subsequent payment of $450 per lot. With regard to any lot so selected for conveyance on account of such subsequent payment, that sum must be regarded as the price thereof. There are no other points that require discussion. Our conclusion is that the court below erred in its interpretation of the contract and trust agreement.

The judgment and order are reversed.

Sloss, J., and Victor E. Shaw, J., *pro tem.,* concurred.