[Civ. No. 2666.   First Appellate District, Division One.—August 12, 1919.]

# CERF ROSENTHAL, Respondent, v. JOSEPH C. SILVEIRA, Appellant.

[1] VENDOR AND VENDEE—DELIVERY OF DEED TO ILLITERATE—ACCEPTANCE.—Where the vendee, in an attempt to rescind a contract for the sale and purchase of a certain tract of real property sent to the vendor, who could not read, a quitclaim deed to the premises, and, within a day or two thereafter, the latter turned the same over to his attorney, who returned it to the vendee, only to learn that the latter had, with precipitous haste, filed an action based on the alleged delivery of the deed, and would stand upon whatever advantage he had gained thereby, it cannot be said that the vendor accepted such deed or acquiesced in the vendee's line of action, or that the vendor must be held to have made no objection to the tender of the quitclaim deed by the vendee.

[2] ID.—CONTRACT OF SALE TO THIRD PARTIES—ERRONEOUS FINDING OF OWNERSHIP.—Where, in an action by such vendee to rescind the contract and to recover the money paid by him on account of the purchase price of said tract, the evidence showed that such vendee had entered into a contract for the sale of a portion of the tract to third parties, and a deed thereto, together with a portion of the purchase price, was placed in escrow, and such third parties had entered into possession of such portion of the tract, a finding that neither such third parties nor any other person, other than plaintiff, had any right or title in or to said contract of sale, or to possession of said tract, or any portion thereof, was contrary to the evidence.

[3] ID.—DEED CONSIDERED BEFORE COURT—NOT OFFERED IN EVIDENCE—ESTOPPEL BY SILENCE.—Where a quitclaim deed is not actually admitted in evidence but its existence and the fact of its execution are considered to be before the court by all parties, its substance, and the date and book and page of its recordation being read into the record by counsel during the trial, and the court makes a finding thereon, the plaintiff will be estopped, on appeal, from objecting to the deed being considered in evidence.

[4] ID.—QUITCLAIM DEEDS — INTEREST CONVEYED.—Where the vendee under a contract for the sale of a certain tract of real property had quitclaimed his interest to a third party, a quitclaim deed thereafter executed and tendered by him to the vendor conveyed

---

4.   Effect of quitclaim deed, notes, 53 Am. Rep. 749; 105 Am. St. Rep. 854; Ann. Cas. 1913C, 363.

nothing to the latter. Such a deed does not operate to pass an interest after acquired.

[5] ID.—RIGHT TO CONVEYANCE TO PART OF TRACT—TENDER OF AGREED PRICE—REFUSAL TO CONVEY.—Where the contract of sale provided for a given payment down on the entire tract and further that the purchaser should have the right to a conveyance of one or more acres of the land upon the payment of a given sum per acre, the vendor was justified in refusing to execute a deed to a portion of the tract where the vendee did not tender the further payments.

[6] ID.—BREACH OF DIVISIBLE PART OF CONTRACT—WHOLE CONTRACT NOT ABANDONED—RIGHT TO RESCIND.—Where the contract for the sale of real property is divisible and separable, and the vendor refuses to carry out the separable part providing for the conveyance of a portion of the property, the vendee is not entitled to rescind the entire contract and recover the amounts paid on account of the purchase price of the whole tract, the contract for the purchase of which has not been abandoned by the vendor, and as to which there was no default.

[7] ID.—FAILURE TO PAY TAXES AND INTEREST—FINDING OF PERFORMANCE UNSUPPORTED.—In an action by the vendee for the rescission of a contract for the purchase of a certain tract of real property and for the return of the moneys paid thereunder, a finding that "at all times plaintiff has performed each and every obligation agreed by him to be performed in and by the terms of the said agreement of sale," is not supported by the evidence where it appears that at the time of the attempted rescission plaintiff has not paid, nor offered to pay, the taxes and accrued interest in accordance with the agreement of purchase.

[8] ID.—CONDITIONS PRECEDENT UNPERFORMED — RIGHT TO MAINTAIN ACTION.—Under an agreement of sale and purchase such as that involved in this case, neither the vendor nor the vendee can maintain an action thereon against the other without having performed all the conditions previously to be performed by him.

APPEAL from a judgment of the Superior Court of Alameda County. T. W. Harris, Judge. Reversed.

The facts are stated in the opinion of the court.

F. I. Lemos, Rose & Silverstein and Fitzgerald, Abbott & Beardsley for Appellant.

Albert C. Aiken for Respondent.

6. Right of vendee to recover payments made on rescission of contract for purchase of land, note, L. R. A. 1918B, 547.

WASTE, P. J.—Appeal from a judgment; rendered in favor of plaintiff and respondent, for the sum of $8,257.75, together with costs and disbursements, ordering that plaintiff have a lien upon the real property involved in the action to the amount of the judgment, and canceling and annulling a contract, wherein plaintiff agreed to purchase from defendant, and defendant agreed to sell, the real property described in the pleadings. The judgment of the court below is for the return of the payments made by plaintiff on the purchase price of the land, and interest, on the theory that there was a rescission of the contract.

Plaintiff in the case is an experienced real estate operator and engineer by profession. He bought the property for subdivision purposes. He understands perfectly the English language. Defendant is a Portuguese farmer, unable at all to read or write the English language and understanding it at best but imperfectly.

The property in question was part of the farm owned and cultivated by the defendant. The contract provided for the sale of the property for the sum of thirty thousand dollars, five thousand dollars of which amount was paid on execution of the contract. The balance of twenty-five thousand dollars was payable at any time within four years from date. The contract also provided that all taxes on the property, which became due after June 30, 1913, were to be paid by plaintiff, who was also obligated to pay interest on the deferred payments at six per cent net per annum, payable semi-annually, the contract not stating whether such interest payments were to be paid in advance or otherwise. Under the terms of the agreement, plaintiff was given the right to a conveyance of one or more acres of the land, upon the payment of three hundred dollars, or five hundred dollars, per acre, according to the location of the property, but no definite time was stated when or under what conditions such conveyances should be made. Time was made the essence of the contract.

Plaintiff took possession of the property, built roads therein, destroying some of the fruit trees in so doing, and plotted out the property for subdivision purposes.

The tract, being part of defendant's entire acreage, was assessed in one amount for 1913–14. Rather than allow the tax to go delinquent, and after his attention had been called to the matter by the tax collector, the defendant paid taxes on the whole

tract for the year 1913 when they became due. After settlement as to the amount due, plaintiff repaid to defendant his *pro rata* share, as required by the agreement. Plaintiff also paid all installments of interest to and including July 2, 1914. Taxes for the year 1914–15 became due October, 1914, and were again paid by the defendant. No adjustment or *pro rata* payment by the plaintiff had been had when the purported rescission took place, on December 29, 1914, nor had the interest on the contract been paid subsequent to July 2d of that year.

After entering into possession of the tract plaintiff, on February 6, 1914, made a quitclaim deed of the property to the Clarabelle Realty Company, and this deed was recorded. Plaintiff also entered into a contract, without the knowledge of defendant, to sell two and one-half acres of the tract to a German, whose name was unknown to defendant. No money was paid on this contract, and the purchaser appears to have never entered into possession. The plaintiff, through the realty company, entered into a written agreement, in escrow, with S. G. and Clara F. Brown, for the purchase of five acres of the real property. Brown entered into possession. No money was paid to defendant under either the contract with the unknown purchaser or with Brown, and neither contract was recorded.

On December 29, 1914, in the evening, after defendant was in bed, plaintiff, accompanied by a Mr. Atthol, called upon the defendant at his residence, near Hayward, and requested defendant to sign a deed conveying sixteen and two-thirds acres of the premises, explaining to defendant that it was in consideration of the five thousand dollars theretofore paid and credited on the purchase price at the time of the execution of the contract. Defendant refused to execute the deed. Thereupon plaintiff tendered to defendant the further sum of three hundred dollars and demanded that he sign a conveyance of a certain one acre of the land to the party Atthol, as provided in the contract. Defendant also refused to accept the three hundred dollars or to execute the conveyance demanded.

The evidence is conflicting as to just what occurred at this meeting. The plaintiff testified that the defendant positively refused to execute any further deeds until the remainder of the purchase price, amounting to twenty-five

thousand dollars, had been paid. The defendant testified that he merely explained to the plaintiff that he did not understand the matter, and requested that the execution of the deeds be postponed until the next day, when he could consult his attorney; that his only refusal to comply with plaintiff's demand occurred when he was pressed by plaintiff to sign the deeds, and finally said, "No, I sign nothing to-night, until I see my lawyer." While the trial court, with the witnesses before it, was satisfied with, and accepted, plaintiff's version of the occurrence, and what subsequently transpired, and found that defendant's conduct amounted to a rescission of the contract, we cannot but feel that there is much in the whole line of action of the plaintiff on the occasion of that visit, and immediately thereafter, which lends vivid color to the contention of the appellant that "the purpose of this visit by Rosenthal and Atthol was to inveigle Mr. Silveira into some sort of a technical default, so as to enable plaintiff and his successors in interest to evade carrying out of the contract of purchase."

On the very next day following the visit to defendant, at Hayward, plaintiff signed, and sent by a messenger to defendant, who personally received it, a notice of rescission and cancellation of the contract of sale, based on the alleged refusal of defendant to execute deeds for certain portions of the tract, and for false statements and alleged misrepresentations to various prospective purchasers. We pause here to note that nowhere in the record does it appear that any false statements or misrepresentations were ever made by defendant, or by anyone in his behalf, in the premises. The notice was accompanied by a quitclaim, executed by the plaintiff and his wife to defendant and his wife, which deed released and quitclaimed the entire tract. It contained a recital that it was "made for the purpose of releasing all interests of the" makers "by reason of" the contract of sale between the parties. The plaintiff did not in this notice, or at any other time, offer to pay, or tender, to defendant the taxes accrued on the property, and paid by defendant, for the year 1914, or the interest on the contract which accrued after July 2d of that year.

Defendant could not read the documents thus served on him, but within a day and a half, or two days, he handed them to his attorney. The latter, acting for defendant, as

quickly as he could ascertain the proper address, returned the quitclaim deed to plaintiff. This was on January 4, 1915, and but five days after its receipt by defendant. In a letter accompanying the returned deed, defendant, through his attorney, denied refusing to execute any deeds, and the making of any false statements concerning the matters at issue, and stated his willingness to comply with the terms, covenants, and conditions mentioned in the contract of sale, and demanded payment of the unpaid interest, amounting to $750, and settlement for the taxes as therein provided. He offered further to make a deed to plaintiff of all the property covered by the contract upon being paid the full amount of the purchase price. Plaintiff had, however, immediately after executing the quitclaim deed, brought this action for rescission, and return of the amounts paid, alleging the delivery of the deed to defendant, of which fact his attorney notified the attorney for defendant, inclosing the deed, and refusing to entertain its return to plaintiff. Defendant's attorney offered in reply to hold the quitclaim deed for Rosenthal, but that offer was refused, plaintiff's counsel stating that the return was absolute and that the action would be tried as the facts existed at the time it was filed. There the matter rested.

[1] On the foregoing facts we cannot find warrant for accepting the trial court's finding that the defendant "accepted" the quitclaim deed. It is true there was a manual delivery of the document to Silveira, who was unable, by reason of his illiteracy, to read it. He promptly handed the document to his lawyer, who returned it to Rosenthal, only to learn that that party had, with precipitous haste, filed an action based on the alleged delivery of the deed, and would stand upon whatever advantage he had gained thereby. We are unable to find acceptance or acquiescence in this line of action. Neither do we share the view of appellant, that on the foregoing facts defendant must be held to have made no objection to the tender of the quitclaim deed by plaintiff.

[2] The lower court found that "neither the Browns, nor Clarabelle Realty Company, nor any other person, other than plaintiff, had any right or title in or to said contract of sale, or to possession of said tract, or any portion thereof on December 30, 1914, when it was offered back to defendant, and the contract released to him by the quitclaim deed." This

finding is contrary to the evidence. The contract between the realty company and the Browns, for the purchase of five acres of the tract, was entered into in May, 1914, and the papers were placed in escrow in the Farmers and Merchants' Bank in Oakland. The sum of five hundred dollars, and a deed to a certain lot, as part of the purchase price for the acreage, were handed to the bank with written escrow instructions, signed by the Clarabelle Realty Company and by the Browns. The latter went into immediate possession, and, according to the evidence, as we read the uncontradicted record, were in possession at the date of the attempted rescission by plaintiff. They apparently had no thought of abandoning their contract until the plaintiff in person went to them and asked to be released from the contract. In spite of the effort of the plaintiff, in the lower court, to fix the date of the alleged surrender of possession by the Browns as being prior to December 30th, the record fails to substantiate the finding of the court. On the contrary, the record does show that it was not until January 15th, following the filing of the action, that the escrow was ended. On that day, under written instructions bearing the same date, and signed by the Clarabelle Realty Company by its proper officers, the bank redelivered to Mrs. Brown the five hundred dollars theretofore paid and the deed, given as part of the same purchase price for the five-acre tract. Furthermore, the Browns left their furniture in a building on the tract and some of it was still there at the time of the trial. No quitclaim deed from the Browns, or any release by them of plaintiff, or the Clarabelle Realty Company, other than the receipt for the five hundred dollars, and "all papers in connection with above escrow," appear in the record.

Again, there is nothing in the record by which it may be determined that the party, whose name is unknown, but referred to as the "German," had no right or title in the property, as vendee of the Clarabelle Realty Company.

As before stated, on February 6, 1914, plaintiff made a quitclaim deed of the property in question to the Clarabelle Realty Company, which deed was duly recorded in the office of the county recorder of Alameda County. [3] While this deed, by some inadvertence, possibly, does not appear to have been actually admitted in evidence, its existence and the fact of its execution appear to have been considered before

the court by all parties. Its substance, and the date and book and page of its recordation, were read into the record by counsel during the trial. On this statement of counsel the court made its finding. Plaintiff is, therefore, estopped from objecting to the deed now being considered in evidence. (*Baker* v. *Eilers Music Co.*, 175 Cal. 652, [166 Pac. 1006].) It was under this quitclaim deed and right of ownership in the contract of sale thereby conveyed that the contracts between the realty company and the Browns, and the unnamed German, were made. No reconveyance of the property was ever made by the realty company to plaintiff or defendant until during the trial, two years and more, after the filing of the action. The lower court's finding in that regard is as follows: "Defendant at the time of the tender and receipt by him of the quitclaim deed, executed by plaintiff, did not state any objection to the form or substance of such tender, nor until at the trial, when the fact of the record of the deed to the Clarabelle Realty Company was raised. Plaintiff thereupon tendered to defendant a duly executed and acknowledged deed of said Clarabelle Realty Company, dated January 18, 1916, conveying to plaintiff the said record title, which defendant thereupon refused to accept."

[4] It thus appears from the evidence, and from the court's finding, that when Rosenthal and wife quitclaimed to defendant and wife the property covered by the contract of sale, the quitclaim deed so tendered conveyed nothing to defendant. "A quitclaim deed . . . purports to convey, and does convey, no more than the present interest of the grantor, and does not operate to pass an interest after acquired." (Ann. Cas. 1913C, p. 368.) Rosenthal had already conveyed to the Clarabelle Realty Company, by deed of record, all his interest and right in the property. His quitclaim deed to defendant, therefore, did not revest the defendant with the title to the property freed from the cloud created by the contract of sale. The right to whatever claim or demand might be asserted thereunder was legally vested in the realty company at the time the action was commenced. The finding of the court last quoted, therefore, is contrary to, and inconsistent with, its earlier recital that the Clarabelle Realty Company had no right or title in the contract of sale, or possession of the land, when plaintiff offered it back to de-

fendant, and the contract was released to him by the quit-claim deed of Rosenthal and wife on December 30, 1914. ·

[5] The contract of sale between plaintiff and defendant was a divisible and separable one. It was such a contract that full performance of one part might be made by both parties without affecting the subsequent performance, or right of performance, as to the remainder. The cash payment of five thousand dollars made by plaintiff to defendant upon the execution and delivery of the agreement of sale was nothing more than "a general payment on the price of the tract as an entirety, required in order to provide a margin suffi-cient to safeguard the seller against loss, from the convey-ance of one or more lots upon the subsequent payment" of the required amount per acre. (San Diego Construction Co. v. Mannix, 175 Cal. 548, [166 Pac. 325].) A reading of the plain terms of the contract forbids any other construc-tion. The defendant was, therefore, right in his refusal to execute the deed for the sixteen and two-thirds acres of land, first demanded by the plaintiff on the occasion of the visit to Hayward on the evening of December 29th.

[6] The agreement was to convey the entire tract for the total sum of thirty thousand dollars. Five thousand dollars was paid as the initial payment, the balance to be paid at any time, at the option of the plaintiff (the vendee), within four years, together with interest and taxes. At the time of the attempted rescission by plaintiff, and even at the date of the trial, the time of payment of the balance of the pur-chase price had not yet elapsed. There could not, therefore, have been any default as to the entire contract without the ex-ercise by plaintiff of his option, and the tender or payment by him of the balance of the unpaid purchase price, interest, and taxes. There was not, therefore, any abandonment by defendant of the whole contract, but at most a refusal on his part to carry out that portion of the agreement which provided for the conveyance of a single acre, or more, on payment of three hundred dollars for each acre so conveyed. Plaintiff was, therefore, not entitled to recover any part of the initial payment of five thousand dollars, which the lower court included in its judgment. (San Diego Construction Co. v. Mannix, supra.) In that respect, therefore, the judgment was erroneous.

[7] We are of the further opinion, also, that plaintiff was not entitled to any judgment. The lower court found that "at all times plaintiff has performed each and every obligation agreed by him to be performed in and by the terms of the said agreement of sale." This finding is not supported by the evidence. Plaintiff was by the terms of the contract required to pay the taxes on the property he agreed to purchase from the date of June 30, 1913. The part sold to plaintiff was a part of the larger tract owned by defendant. When the taxes for the fiscal year 1913–14 were levied on the tract in question they were included in the tax of the larger parcel. Plaintiff did not pay his proportionate share, and rather than have the tax go delinquent, with added penalties to pay, defendant paid the whole amount. It was not until much time elapsed, and considerable correspondence on behalf of defendant through his banker, that he was able to collect the amount from plaintiff. The following year the same procedure was followed by the county assessor in regard to the levy of the tax on the property in question. Defendant was again compelled to pay the tax on the property. At the time of the alleged rescission on December 30, 1914, plaintiff had not repaid his proportionate amount thereof to defendant. He never paid the amount, and never tendered or offered to pay it. Even if it be true, as found by the lower court, in that connection, on the sharply conflicting evidence, that at the time of the settlement between the parties for the 1913–14 taxes paid by defendant, it was agreed between them "that on the succeeding year of 1914–15 said Silveira should pay the total taxes in similar manner, and that the parties should thereafter meet and arrive at a *pro rata* adjustment of the amount between themselves, and that, pursuant to said agreement, said Silveira paid the said total taxes for 1914–15, but said parties never met to apportion the amount to be paid by each, and that Silveira never requested repayment of the amount so paid by him," the fact remains that plaintiff, at the time he was seeking to put defendant in technical default in the matter, was indebted to him for the amount of the taxes so advanced. He never repaid or offered to repay the amount, and the court's finding in the matter does not present any legal or equitable ground for his refusing so to do.

In yet another particular the finding of the court, as to full performance of the contract by the plaintiff, is not sustained. As the contract did not provide when the semi-annual payment of interest should be made, it was payable at the end of each semi-annual rest. Plaintiff paid his interest in full to July 2, 1914. Consequently, when, on December 30th of that year, he served his notice of rescission and cancellation and the quitclaim deed, interest on the contract had accrued for the entire period of six months, less four days. When the action to recover the amount of the purchase price paid and to rescind the contract was commenced, the interest for the six months last preceding, amounting to the sum of $750, was due.

Respondent seeks to avoid the issue of failure to pay, or tender the amount of the taxes, and interest, by reliance upon the fact that when he produced, and tendered, the three hundred dollars for the Atthol deed, defendant made no objection, either to the amount of the tender or to the form of the offer, and that no objection was made to the quitclaim deed or to the offer of rescission. As defendant very promptly returned the deed (although it was remailed to his attorney after suit brought), and as promptly made a counter-demand for the payment of the unpaid taxes and interest, we are not impressed with plaintiff's argument. [8] Under the agreement between plaintiff and defendant, neither could maintain an action thereon against the other without having performed all the conditions previously to be performed by him. (Concurring opinion of Mr. Justice Harrison in *Glock* v. *Howard,* 123 Cal. 19, [69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713].)

We see nothing in the record of this case which will warrant us in holding that plaintiff was in any manner excused, or released, from the full performace of the obligations imposed on him by the terms of the severable contract of sale. The effort of plaintiff to rescind the contract just before the semi-annual payment of interest became due, and after his *pro rata* of taxes was past due, coupled with his personal activity in securing from the Browns a release from their contract on which they had paid a considerable amount, and with which they do not appear to have been dissatisfied, taken in connection with all the facts and circumstances surrounding the attempt to

secure the execution by the illiterate defendant of the two deeds on the evening of December 30th, followed, as it was, by the precipitous haste in tendering the quitclaim deed and the immediate filing of the action in rescission—all these matters are to us *indicia* that defendant's characterization of plaintiff's action was correct, and that he is not in court with hands so clean, or intention so far removed from guile, as to entitle him, on the showing made, to the judgment he has secured. We find nothing in the record indicating a rescission of the contract of sale by mutual consent of the parties, and the plaintiff has not shown equitable grounds entitling him to such right in equity. (*Glock* v. *Howard, supra.*)

Other matters are called to our attention on this appeal, but in view of the conclusion reached, we do not deem them worthy of consideration.

The judgment is reversed.

Richards, J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 9, 1919.

All the Justices concurred, except Olney, J., who was absent.