(83 South. 580)

No. 23113.

DEERING HARVESTER CO. v. C. L. SMITH FARM LAND DEVELOPMENT CO.

(March 31, 1919.  On Rehearing, Jan. 5, 1920.)

*(Syllabus by Editorial Staff.)*

1. MORTGAGES ⬪310 — PARTIAL RELEASE CLAUSE IN CONTRACT NOT RESTRICTED TO PAYMENTS BEFORE MATURITY OF NOTES.

Provision in contract for sale of land that vendor or holder of purchase-money notes would release tracts of not less than 2,500 acres from mortgage and vendor's privilege, on payment of $5 per acre, to be credited on certain note, and would credit money paid for additional releases on any unpaid note at the purchaser's option, was not restricted in operation to payments made in anticipation of the maturity of the notes, notwithstanding Code, art. 8957, relating to construction of agreements.

2. MORTGAGES ⬪310—FAILURE TO DEMAND PARTIAL RELEASES NOT WAIVER OF RIGHT TO THEM.

Where contract of sale of land provided for partial releases from mortgage and vendor's privilege, the purchaser by not demanding the releases at time of payments did not waive them or put on the contract the interpretation that releases were not demandable, where no time was fixed in the contract for demanding the releases, and especially where purchaser expected to pay whole debt and extinguish the mortgage on the whole property at once.

3. MORTGAGES ⬪249(3)—VENDOR'S REFUSAL TO RELEASE LAND FROM MORTGAGE AND VENDOR'S PRIVILEGE PUTTING PLEDGEE OF MORTGAGE IN DEFAULT.

Where contract for sale of land provided for partial releases from mortgage and vendor's privilege, the vendor's refusal of a demand for release corresponding to amount paid without then informing purchaser that he had pledged the notes, which was unknown to the purchaser, done with plaintiff pledgee's knowledge, put plaintiff in default.

4. MORTGAGES ⬪256—PLEDGE OF PURCHASE-MONEY MORTGAGE NOT PASSING IT FREE FROM EQUITIES.

While purchase-money notes pledged to plaintiff before maturity passed free of equities, the purchase-money mortgage did not.

5. MORTGAGES ⬪310—SELECTION OF LAND TO BE RELEASED BY PAYMENTS.

Where a contract for the sale of land provided no rule for the selection of lands for partial releases, and defendant purchaser in its answer in a suit on notes and to enforce the vendor's privilege and mortgage made a selection, the court, in view of the circumstances that the entire area was of a uniform value, would adopt the selection so made and order its enforcement.

6. BILLS AND NOTES ⬪126 — PROVISIONS IN NOTES AND CONTRACT FOR ATTORNEY'S FEES CONSTRUED AS APPLYING TO ALL THE NOTES WHEN SUED TOGETHER.

Where a purchaser's notes provided for 5 per cent. attorney's fees on the amount due at maturity, provided that fee should not exceed $3,000, in the event of suit after maturity, and the contract of sale contained the same provision, such limitation, where suit was on several notes together, plainly applied to the case as a whole, and, although there were five notes, $3,000, and not $15,000, was recoverable as attorney's fees.

O'Niell, J., dissenting.

On Rehearing.

7. MORTGAGES ⬪310 — VESTED RIGHTS OF PURCHASER UNDER PROVISION FOR RELEASE FROM MORTGAGE.

Where a contract of sale provided for partial releases from operation of a mortgage, the purchaser, when it performed sufficient of the terms of the agreement to entitle it to release, had a vested right which could not be and was not forfeited, either by failure to demand a release, or by failure to pay the notes subsequently maturing.

8. MORTGAGES ⬪258—POSITION OF PLEDGEE NO BETTER THAN THAT OF ITS PLEDGOR.

Though no release of tracts had been demanded by purchaser for payments made by it under terms of contract before acquisition of purchase-money notes by plaintiff pledgee, plaintiff was not entitled to rely on security which the record showed them to possess, where the mortgage on which it relied for foreclosure stipulated for releases in favor of purchaser, and the act by which plaintiff acquired notes as collateral recited that all notes previously maturing had been paid, as to which purchaser and maker had a right to releases when conditions necessary to obtain them had been performed, so that plaintiff's position was no better than that of its transferor.

Appeal from Fifteenth Judicial District Court, Parish of Calcasieu; Winston Overton, Judge.

Suit by the Deering Harvester Company against the C. L. Smith Farm Land Development Company on notes and to enforce a vendor's privilege and mortgage. Judgment for plaintiff, and defendant appeals. Affirmed in part and reversed in part, with allowance of interest to plaintiff.

Smith & Crawford, of Beaumont, Tex., and Pujo & Williamson, of Lake Charles, for appellant.

Milling, Godchaux, Saal & Milling, of New Orleans, and McCoy & Moss, of Lake Charles, for appellee.

PROVOSTY, J. Plaintiff, through a trustee, sold to Waddell, all on credit, 42,512 acres of marsh land for as many dollars, and Waddell executed for this purchase price his two notes, one for $25,000, due in one day, and the other for $17,512, due in one year, secured by vendor's privilege and mortgage on the property. On the same day, to wit, November 30, 1912, Waddell sold the property to defendant for $255,072. Defendant paid $94,233 cash, and for the balance assumed the payment of the two Waddell notes, and executed its own notes to its own order and by itself indorsed in blank, and identified by the notary's paraph with the act of sale and mortgage, as follows: One note for $7,488 due December 1, 1913; one note for $25,000 due December 1, 1914; one note for $25,000 due December 1, 1915; one note for $25,000 due December 1, 1916; one note for $35,000 due December 1, 1917.

[1] All these notes have been paid except the three last; and this suit is upon the latter, and for the recognition and enforcement of the vendor's privilege and mortgage and for taxes paid and attorney's fees. Plaintiff holds the notes as pledgee, and sues as such. The only defenses are that no more than $3,-000 is due for attorney's fees, and that the defendant is entitled to have the mortgage released from 2,500 acres for every $12,500 it has paid, under the following clause of its contract with Waddell:

"And it is further understood and agreed that the vendor herein, or the legal holder or holders of said promissory notes herein given as portion of the purchase price, will release in tracts of not less than 2,300 acres in a compact body to the purchaser hereof, or to its assigns or transferees, from the effect and operation of said mortgage and vendor's privilege, on payment to the holder or holders of said notes of the sum of $5 per acre for the number of acres so released, the amount so paid to be credited as of date of payment on the note the due date of which is December 1, 1914; for all acreage released over and above the 2,500 acres just above mentioned the $5 per acre necessary to be paid to secure said release shall be credited upon any unpaid note executed by or assumed by the purchaser herein, at the option of the purchaser or its successors. It is specially understood that no tract will be released at one time containing less than 2,500 acres."

Plaintiff would restrict the operation of this clause to payments made in anticipation of the maturity of the notes; and its learned counsel argue in support of that construction that, inasmuch as by another clause of the contract default on one of the notes is to cause all the notes to become due and the mortgage as a whole to become enforceable upon the entire property, the release could be demanded only for payments by anticipation, since a release could hardly be demandable after the mortgage as a whole had become enforceable.

If payments by anticipation had been intended, nothing could have been easier than to use language expressing that idea. The word "payment" is used unqualifiedly; and we must assume that a writing drawn up by business men to evidence a transaction of the magnitude of the one in question expresses the ideas intended to be expressed.

The learned counsel quote article 1957 of

the Code, "The agreement is interpreted against him who has contracted the obligation," and say that defendant was the obligor.

Defendant was the obligor for paying the debt, but not for giving the release; and the sole obligation imposed by said clause is the giving of release.

Next, the learned counsel say that, "in order to release the first 2,500 acres of land, it was necessary that $12,500 should have been paid and credited upon the note of December 1, 1914, which would have meant a payment of $12,500 in addition to the payments to be made upon the two notes of $25,000 each due on December 1, 1912, and December 1, 1913, respectively," and that this shows clearly that, for the release, payment by anticipation was meant.

This interpretation does not take into account the provision that "for all acreage released over and above" the first 2,500 acres the purchaser may require the payments to be credited on any note executed by it or on any note assumed by it. To say that defendant is not entitled to a release for payments credited on any of the notes it executed, or on any of the notes it assumed the payment of, is simply to go against the plain language of the clause.

[2] Next, it is argued that by not demanding the releases at the time of the payments the defendant waived them, or, at any rate, put upon the contract the interpretation that the releases were not demandable.

Suffice it to say of this argument that it is founded upon nothing at all. There is no time fixed in the clause for demanding the releases; and why should the defendant be demanding partial releases if it had no present need of them, and especially if it expected to pay the whole debt and extinguish the mortgage upon the entire property at once, as evidently was its expectation? In the cases cited by the learned counsel, except in one, the release clause was differently worded. Thus in Commercial Bank v. Hiller, 106 Mich. 118, 63 N. W. 1012, the release was to be accorded as to one-fifth of the lots "as fast as the lots were contracted to be sold," and as to the remaining four-fifths "upon the payment of $150 for each and every lot to be released." The latter stipulation, said the court, "evidently contemplated that the payment and demand for release were to be concurrent." The court must have considered that the agreement for the four-fifths was to be read in the light of the agreement for the one-fifth, so that the release of each lot was to be a special and separate transaction. In the case of McComber v. Mills, 80 Cal. 111, 22 Pac. 55, the lots were to be released "whenever the defendant might desire to sell any of them." The court said that the defendant had not paid plaintiff "$250 or any other sum for the release of any particular lot, and did not tell plaintiff what particular lots he wished released under the contract," and that besides the contract had been changed by a subsequent agreement to the effect that no more lots were to be released. The case of Stephens v. Keen, 68 Fla. 558, 67 South. 226, seems to be analogous to the present, but was made to turn, it seems to us, upon a rather slender pivot—that the payments were not made as of $50 per acre, but as "a general reduction of the mortgage indebtedness." This would indicate that, if in making the payment the defendant had said I am paying at the rate of $50 per acre, he would have won his case. In Baldwin v. Benedict, 111 Iowa, 741, 82 N. W. 956, what was held was that the defendant could not by paying after default avail himself of a clause allowing release for payment to be made "during the pendency of the mortgage." To the same effect, practically, is Brown v. Cleveland Trust Co., 30 Ohio Cir. Ct. R. 364, and the same may be said of Reed v. Jones, 133 Mass. 116. On the other hand, defendant

cites San Diego Construction Co. v. Mannix, 175 Cal. 548, 166 Pac. 325, where the view taken was the very opposite of that taken in Stephens v. Keen, supra, and where the reasoning appears to us to be absolutely unanswerable.

[3] This brings us to the question of default, upon which also plaintiff relies. The facts in that connection are that some time before the maturity of the note of December 1, 1915, the defendant applied to Mr. Waddell for a release corresponding in amount with the $75,000 already paid, and that Mr. Waddell refused to grant the release unless the $25,000 note which was to mature on December 1, 1915, should first be paid. The reason why the defendant applied for the release was that it needed the land in order to mortgage it for procuring the funds with which to meet the 1st of December payment. Mr. Waddell had then already pledged the notes to plaintiff, but defendant was ignorant of that fact, and, instead of enlightening defendant in that regard, Mr. Waddell, in his correspondence with defendant, dealt with the situation as if the notes were still held by him; but he did this with the full knowledge and consent of plaintiff through its attorney in fact, a Mr. Lauderback, so that he must be considered to have been the representative of plaintiff in the matter. The plaintiff should have complied with the said demands for release, and was clearly placed in default by them.

[4] Next it is contended that, as the notes were pledged to plaintiff before maturity, they passed to plaintiff free of this equity of having to make release of mortgage on payment.

The notes passed free of equities, but the mortgage did not (Citizens' Bank v. Ferry, 32 La. Ann. 310, and other cases too numerous to need to be cited); and it is not with the notes, but with the mortgage, that we are concerned in this case.

As the plaintiff should have made the releases at the time they were demanded, it would be drawing profit from its own default if not required to make them now; and it cannot be allowed to do that.

[5] The contract provides no rule for the selection of the lands to be released. Defendant in its answer has made a selection, and prayed that the court adopt it. The land was sold at a uniform price of $6 per acre, and is all marsh, and the very absence of any provision for selection would seem to indicate that none was necessary, in view of the fact that the entire area is' of a uniform character. Under these circumstances, we will adopt the selection made by defendant and order its enforcement, but with reserve of right to plaintiff to show, on application for rehearing, why some different disposition should be made.

[6] The notes contain the following provision for payment of attorney's fees:

"And 5 per cent. attorney's fees upon the amount then due, provided that such fees shall not exceed the sum of $3,000, in the event of suit or in the event this note is placed in the hand of an attorney after maturity."

And the contract contains the following:

"Said notes stipulating in case it shall become necessary to place them in the hands of an attorney for collection the said purchaser binds himself to pay the fees of an attorney at law who may be employed for that purpose, which fees are hereby fixed at 5 per cent. upon the amount then due, provided that such fee shall not in any event exceed the sum of $3,000."

Plaintiff demands $3,000 per note, or $15,000.

What would have been the proper interpretation of these clauses if the notes had been sued on separately need not be considered, since they are being sued on together; so that the $3,000 limitation contained in the contract applies plainly to the case as a whole; and that was the view taken by our learned brother below.

It is therefore ordered, adjudged, and decreed that the following lands situated in the parish of Cameron are released from the vendor's privilege and mortgage of the plaintiff, to wit:

*Township 13 South, of Range 13 West:*

Section 4: Entire section.

Section 5: Entire section.

Section 6: North half of north half; west half of southwest quarter.

Section 7: North half of southwest quarter; southeast quarter of southwest quarter; east half of northwest quarter.

Section 8: Entire section.

Section 9: Entire section.

Section 17: Entire section.

Section 18: Entire section, except northwest quarter of northwest quarter.

Section 19: Entire section.

Section 20: Entire section, except east half of southeast quarter.

*Township 13 South, of Range 14 West:*

Section 1: Entire section, except east half of southeast quarter, northwest quarter of southwest quarter, and southeast quarter of northeast quarter.

Section 2: Entire section.

Section 3: Entire section.

Section 4: Entire section.

Section 5: Entire section, fractional, containing 360 acres.

Section 7: Entire section.

Section 8: Entire fractional section, containing 480 acres.

Section 9: Entire section.

Section 10: Entire section.

Section 11: Entire section.

Section 12: North half of south half and north half of section.

Section 13: South half of north half and south half of section.

Section 14: Southeast quarter and north half of northeast quarter.

Section 15: North half of northeast quarter, and northwest quarter of section.

Section 17: Fractional west half and northeast quarter of section, containing 320 acres.

Section 20: Fractional west half and southeast quarter of section, containing 320 acres.

Section 22: South half of northeast quarter and south half of section.

Section 23: Entire section.

Section 24: Entire section.

—and that, in so far as recognizing and ordering the enforcement of plaintiff's vendor's privilege and mortgage upon the said lands here released is concerned, the judgment appealed from is set aside, but that in all other respects it be affirmed; the plaintiff to pay the costs of this appeal, and the defendant those of the lower court.

O'NIELL, J., dissents, being of the opinion the judgment appealed from should be affirmed.

### On Rehearing.

DAWKINS, J. It has been strenuously urged on rehearing that we were in error in allowing the defendant the benefit of the release clause contained in the deed from Waddell to it; the main argument being that, in order to avail itself of this stipulation, payments should have been made for the express purpose of a release and in anticipation of the maturity of the notes representing the purchase price.

A familiar rule of interpretation requires that ambiguous or doubtful language in a contract must be construed most strongly against him who has obligated himself. R. C. 1957. It is true that, as to the obligation to pay the purchase price, the defendant was the debtor, and any doubt as to time and manner of payment should be construed against it, but with respect to the release of the lands from the operation of the mortgage the vendor or holder of the notes was the obligor; and to hold that defendant could not

require the release, as stipulated in the deed, except by making payments in advance of the maturity of the notes (after paying $12,500 upon the note due December 1, 1914), would not only be giving a construction most favorable to plaintiff, the obligor, but would be to write into the contract a condition which the parties themselves did not see fit to impose.

[7] Contrary to the view expressed by the lower court that the purpose of this stipulation was to enable the vendee to give clear titles in case of sale, and not for its benefit, we think that, when the deed recites that "the vendor or legal holder or holders * * * will release in tracts of not less than than 2,500 acres in a compact body to the purchaser hereof or to its assigns," it means what it says, and defendant had the right to have the property in the proportions stipulated released to itself. We also think that, when defendant performed sufficient of the terms of the agreement to entitle it to a release, the right became a vested one which could not be, and was not, forfeited, either by the failure to make the demand or by the failure to pay the notes subsequently maturing. To the extent that payments were made and the right to a release had accrued the undertaking became an executed contract on the part of defendant, and entitled it to demand performance of that part which had accrued in its favor. Of course, as long as defendant had not performed the obligation or condition which was necessary to a release, plaintiff held for its security the entire property, and, according to the mortgage, a failure to pay any one of the notes matured all the rest; but, when those obligations were performed, plaintiff's mortgage rights were reduced pro tanto, if defendant saw fit to exact the release. Plaintiff had the right, or its transferor did, in making the sale, to require that all of the land remain mortgaged until the final payment of the purchase price; but, for reasons which were mutually satisfactory, it saw fit to waive or modify this right in the manner indicated, and must abide the result.

[8] It is argued that, inasmuch as no releases had been demanded for payments made prior to plaintiff's acquisition of the notes sued upon, it was entitled to rely upon the security which the record showed them to possess. However, this loses sight of the fact, not only that the very mortgage upon which it relies for the right to foreclose contained the stipulation for releases in favor of defendant (and, claiming the benefits, it must recognize the obligations), but in the very act, dated December 31, 1913, by which plaintiff acquired these notes as collateral security, it is recited that all of the notes maturing prior to that time had been paid, and upon which defendant had the right to releases when the condition necessary to obtain them had been performed. It also held the note due December 1, 1914, upon which it was necessary to make the payment of $12,500 before the first release could be had, and that was paid. We think plaintiff's position is no better than Waddell's would have been had he continued to hold the notes.

We were in error in our former decree in not allowing interest from June 1, 1915, instead of from June 1, 1916.

For the reasons assigned, our former decree is amended so as to allow the stipulated interest from June 1, 1915, and in all other respects the said decree is reinstated and made the final judgment of this court.