(129 So. 139)

**SCHEXNAYDER et al. v. CAPITAL RIVER-SIDE ACRES, Inc.**

No. 30317.

May 5, 1930.

Rehearing Denied June 2, 1930.

cember 5, 1927, and the taxes on the property each year, including those for 1928, the taxes for 1929 not having fallen due when this suit was filed. Defendant, after having obtained an extension of one year on the second note, for the consideration of $500, paid cash, defaulted on that note, as well as upon the note maturing December 5, 1928, neither of which has been paid, nor have the remaining notes been satisfied, or the interest thereon since December 5, 1927. The mortgage contains a clause to the effect that the failure to pay any note at maturity, or the interest annually, as it falls due, or the taxes before they become delinquent, shall ipso facto mature the entire indebtedness.

In view of these defaults plaintiffs caused executory process to issue on the unpaid notes, secured by vendor's privilege and special mortgage, and caused the entire plantation to be seized. Defendant then intervened in the executory proceedings, and prayed for a writ of injunction to issue against plaintiffs to restrain them from foreclosing their mortgage on fifty-three and one-third acres, on the front of the plantation, and shown in a plat attached to the intervention. The basis of the intervention is the payment of the first note and the provisions of a release clause, contained in the mortgage, reading as follows, omitting the first paragraph, which is repeated almost word for word, without the slightest change in substance, in the next paragraph, which is our first, to wit:

"It is further contracted and agreed between the parties hereto that said property may be sub-divided into squares and lots, or either, with streets and neutral grounds, or without neutral grounds, or in any manner as the purchaser sees fit, and the said property may be sold by the purchaser in squares or lots, or either, and the vendors herein agree and bind and obligate themselves, and each of

C. C. Weber, of Donaldsonville, for appellants.

Alfred D. Danziger, of New Orleans, Clive W. Kernan, of Baton Rouge, Albert B. Koorie and P. H. Stern, both of New Orleans, and Fred G. Benton, of Baton Rouge, for appellee.

OVERTON, J.

Plaintiffs sold to defendant the Beaulieu plantation, in the parish of West Baton Rouge, having a front on the Mississippi river of twenty-eight arpents, running back between converging lines, to a depth of eighty arpents. This sale was made for $100,000, of which $20,000 was paid cash, and the balance evidenced by ten promissory notes, for $8,000 each, one payable on December 5th of each year, beginning with the year 1926, with 6 per cent. per annum interest thereon from date until paid, the interest payable annually, secured by special mortgage and vendor's privilege on the property sold. The mortgage contains a provision as to attorney's fees.

Defendant paid the note maturing December 5, 1926, on December the 30th of that year, paid the interest on all of the notes up to De-

them, at any time upon the payment by the purchaser of $150.00 in cash lawful current money of the United States of America, to the holder or holders of mortgage notes herein given and described to release from the mortgage and the vendor's lien and privilege herein granted, one acre of the Eastern or front one-third of the property herein conveyed and mortgaged, said acre tracts to be selected and designated by the purchaser, its successors or assigns, and the said purchaser, its successors or assigns having the right to select whatever acre it shall desire for release of the front or Eastern one-third of the land covered in the act of sale under the above conditions; and the said holder or holders of the notes herein executed shall release in said manner from the operation of said mortgage acres in the front or Eastern one-third of the land covered by the act of sale whenever and as often as the purchaser, its successor or assigns shall choose to pay the sum of $150.00 per acre for the release thereof. Such payments are to be always credited on the mortgage notes herein executed and to be credited in such cases on the earliest maturing mortgage note or notes outstanding and unpaid at the time of said payment and reduce in each case said note or notes by the amounts so paid, and that upon such payments for release the said holder or holders of the notes will execute an act of release of mortgage of any property released under the terms and conditions herein set forth and as herein provided.

"Upon the payment by the purchaser, its successors or assigns to the vendors or holder or holders of said mortgage notes of the sum of $75.00 cash per acre of one acre tracts situated in the middle one-third of the property herein conveyed, shall, upon the exact terms and conditions as set forth in the above paragraph be released from the mortgage and vendor's lien and privilege herein granted.

The release to be always made at the option of the purchaser, its successors or assigns. Upon the payment by the purchaser to the vendors or future holder or holders of the mortgage notes herein given of the sum of $50.00 cash per acre, one acre tracts situated in the rear or Western one-third of the property herein conveyed, shall, upon the exact terms and conditions as set forth in this paragraph be released from the mortgage and vendor's lien and privilege herein granted, the selection to be at the option of the purchaser, its successors or assigns.

"All of said payments so made for releases being always credited upon the amount due upon said notes and reducing the amount due on said mortgage notes by the amount so paid in the manner herein above fully set forth.

"And in order to facilitate and effectuate this provision for the release of parcels of ground or acreage tracts, or lots, and all release agreements herein provided, it is hereby agreed and understood between the parties that the Canal Commercial Trust and Savings Bank of New Orleans, Louisiana, is hereby constituted the agent, trustee and mandatary of the vendors or any future holder or holders of the mortgage notes hereinabove described, to receive from the vendee or its successors or assigns the sums which the vendee, its successors or assigns shall pay as aforesaid for the releases of the said acreage tracts or lots, and it is hereby stipulated that the Clerk of Court of the Parish of West Baton Rouge, Louisiana, the Ex-Officio Recorder of said Parish, is hereby authorized and directed, upon an order from the said Canal-Commercial Trust and Savings Bank, of New Orleans, Louisiana, to release from the special mortgage and vendor's lien and privilege herein stipulated as to all of the notes, ten (10) in number, herein executed, such acreage or parcels of ground or acreage tracts or lots,

as the said bank shall in such authority designate and order released.

"And the vendors further agree for themselves and for any future holder or holders of the said mortgage notes that the said Bank is authorized to receive the moneys as aforesaid and that the receipts of the bank for release moneys so paid shall be binding upon them and upon any future holder or holders of said notes as fully to all intents and purposes as if the said moneys had been paid direct to the holder or holders of the said mortgage notes and had been credited direct by the holder or holders of the said notes upon the said notes themselves.

"And now to this act comes and appears C. F. Neibergall, the Vice-President of the Canal-Commercial Trust & Savings Bank, of New Orleans, Louisiana, and taking cognizance hereof accepts for said Canal-Commercial Trust & Savings Bank of New Orleans, Louisiana, the mandate herein set forth and provided, and signs this act for said Canal-Commercial Trust & Savings Bank at New Orleans, Louisiana."

After the overruling of certain exceptions, unnecessary to mention, the case was heard on the question as to whether a preliminary injunction should issue. The trial of this question resulted in a judgment, ordering the injunction to issue, though with a minor change concerning the acreage. From this judgment plaintiffs have appealed.

One of the points made by plaintiffs is that intervener was in default at the time of the payment of the first note, having paid it twenty-five days after maturity. Another point urged is that intervener has estopped itself from demanding a release by not demanding it at the time the payment was made, and not until over two years thereafter.

■ It is urged by interveners that it was not in default when the payment was made; that an extension was granted of twenty-six days, and that the payment was made before the extension expired. As to whether the extension, though granted, was granted for the period urged by intervener is a matter in dispute. The evidence on that point is in conflict. It should be observed, however, that when the payment was tendered plaintiffs did not avail themselves of the clause maturing the entire obligation, but accepted the payment, including the interest on the entire series of notes, and let the matter rest until the maturity of the second note, one year later, when, in consideration of $500 paid in cash for an extension of that note, plaintiffs extended the payment then due one year, thereby treating the matter as if no default had occurred on the first note and on the interest up to that time on the entire debt, and consequently as if the release clause was in full force and effect, and had been so up to then. Plaintiffs therefore are scarcely in position to urge that the payment of the first note and the interest up to that time was made after intervener was in default, and at a time when intervener could not avail itself, if it saw proper, of the release clause.

■ We have assumed in the preceding paragraph that the payments had to be made while intervener was not in default to entitle it to the benefits of the release clause. In our view, however, according to the wording of the release clause, this is not the case. It is immaterial thereunder whether the payment was made before maturity, at maturity, or after maturity, provided, of course, if tendered after maturity, plaintiffs should be willing to accept it, which in this instance they were. It is the fact of payment that entitles the mortgagor to the release, under the clause. The clause does not make it a condition pre-

cedent to the right to obtain the release that the payment must be made at or before maturity. It suffices if the payment tendered after maturity, which is a partial one, as relates to the entire indebtedness, be accepted. The provision in the clause, relating to the imputation of payments to the effect that the payments shall be credited "on the earliest maturing mortgage note or notes outstanding and unpaid at the time of said payment," is merely a directory provision, pointing out upon what note or notes the payment shall be credited, and does not indicate that the effect of the acceptance of a payment tendered after maturity does not entitle the mortgage to a partial release. If the provision created a condition precedent to a partial release, it is obvious from its language that the mortgagor would be entitled to releases only when the payment was made prior to maturity, thus eliminating a payment made even at maturity —a requirement which the parties clearly did not contemplate. Deering Harvester Co. v. C. L. Smith Farm Land Development Co., 146 La. 301, 83 So. 580; San Diego Construction Co. v. Mannix, 175 Cal. 548, 166 P. 325. Moreover, if there is doubt by reason of the wording of the release clause as to the effect of a payment after maturity, the doubt must be resolved against the mortgagees, for ambiguous or doubtful language in a contract must be construed against him who has obligated himself, and, with respect to the release of the land from the operation of the mortgage, the mortgagees were the obligors. Civ. Code, art. 1957; Deering Harvester Co. v. C. L. Smith Farm Land Development Co., 146 La. 301, 83 So. 580.

■ As relates to the time when the release must be demanded, the release clause expressly binds the vendors or mortgagees to grant the release at any time upon the payment of the required sum, as appears from the first paragraph of the clause, as quoted above. Therefore, intervener is not estopped to demand the release merely because it waited two years or more after making the payment before requesting it. Intervener was still within its contractual rights when it requested the release.

Another contention made by plaintiffs is that it was a condition precedent to the obtaining of releases, under the release clause, that the plantation be first divided into lots or squares, and that the obligation to grant releases did not arise until the lots or squares upon which releases were desired had been sold.

[7, 8] No lots or squares have been sold, nor has an agreement to sell any of them been entered into. A plat was made shortly before the foreclosure herein was begun for the purpose of indicating the squares that intervener desired released, and was presented before the executory proceedings were commenced, when the demand was made for the partial release. However, reference to the first paragraph of the release clause will disclose that it was not required as a condition to a partial release that the plantation be subdivided into lots or squares, and that the lots or squares, which it was desired to have released, be sold, or that an agreement to sell them be entered into. All that the provision recites is that the mortgagor may subdivide the plantation into lots or squares, with streets, etc., and may sell the lots or squares. The provision is merely permissive in character, and in no sense makes the right to obtain releases dependent upon the mortgagor's availing itself of the permission granted. The only way that the provision, in our view, can be made a condition to obtaining releases is to give it that effect by interpretation, but its wording will not admit of that construction. Moreover, courts are not inclined to construe

the stipulations of a contract as conditions precedent, unless compelled by the language of the contract, plainly expressed, to do so. San Diego Construction Co. v. Mannix, supra.

■ It is also urged by plaintiffs that the the demand for release was not made on the proper parties; that it was made on the Canal-Commercial Trust & Savings Bank; that, as appears from the three closing paragraphs of the release clause, the only authority of the bank was to grant releases for release money received by it; and that, as the payment of the first note was not made to it, the bank was not authorized to grant the release, even if intervener were entitled to it. But, be that as it may, the contract clearly provides that the release will be granted any time. This means that, so far as relates to the time for granting it, the release will be granted upon the required payment being made, whenever demanded. The intervention herein is certainly a demand on plantiffs for the release of specific squares. It may be observed that, in the Deering Harvester Company Case, supra, the selection of the land to be released was not made until the answer was filed, and that the selection was adopted by the court.

[10-11] It is also suggested by plaintiffs that the only authority given the official of intervener who acted for it in granting the mortgage, by intervener's board of directors, was to purchase the property for $100,000, on terms of $20,000 cash, and the balance on time, secured by special mortgage, without mentioning the right to require partial releases. This right is one that is favorable to intervener, and may be considered as included in the power granted. Besides, intervener ratified this provision by asking for an injunction to enforce it.

■ It is also urged by plaintiffs that intervener, without making a demand for release, after paying the first note, caused the mortgage to be reduced upon the records, in amount, by a partial cancellation of it to the extent of the paid note, and that, as it elected to pursue that course, it has no right now to pursue another course by demanding a partial release. This position is not well taken. The two rights ran concurrently. There is no conflict between them. The payment of the note had the effect of reducing the mortgage to the extent of the note. It also had the effect of entitling intervener to a release from the mortgage of a part of the property secured by the mortgage. Intervener had a clear right to avail itself of both privileges.

■ Complaint is also made that intervener, in making its selection, selected the front of the plantation, but the contract clearly authorized such selection. In fact, we may say that it expressly sanctioned it.

■ It will be observed that intervener asked for the release of fifty-three and one-third acres, which was probably a third of an acre more than it was entitled to. However, at the close of the trial of the rule as to whether the preliminary injunction should issue, intervener abandoned four squares. These four squares were excluded from the judgment, ordering the preliminary injunction to issue, which brought the acreage well within that to which intervener was entitled.

The trial court was not in error in ordering the preliminary injunction to issue.

The judgment is therefore affirmed.

O'NIELL, C. J. dissents.