### WESTGATE v. MARYLAND CASUALTY CO.

### MARYLAND CASUALTY CO. v. WESTGATE.

Nos. 9832, 9833.

Circuit Court of Appeals, Sixth Circuit.
Feb. 7, 1945.

178

Earl Waring Dunn, of Grand Rapids, Mich., for appellant and cross-appellee Bertha L. Westgate.

Paul E. Cholette and Stanley Cheff, both of Grand Rapids, Mich. (Alexander, McCaslin, Cholette & Buchanan, of Grand Rapids, Mich., on the brief), for appellee and cross-appellant Maryland Casualty Co.

Before HICKS, ALLEN and MARTIN, Circuit Judges.

HICKS, Circuit Judge.

Civil action by Maryland Casualty Company against Bertha L. Westgate, herein called Mrs. Westgate. The complaint contained five counts. In the first it was alleged that Elmore Westgate, herein called Westgate, and Mrs. Westgate were each the owners of a one-half interest in the Direct Refineries Stations business; that Howard K. Drake as the agent of Mrs. Westgate applied to plaintiff, herein called Surety Company, for a bond running to the State of Michigan to secure the payment of State taxes upon gasoline, collected by the business; that the bond was issued with Howard K. Drake as the nominal principal, but that the Westgates were the real principals; that upon the strength of the bond a wholesale gasoline license was issued to Howard K. Drake for the year 1939; that from January 1 to February 5, 1939, the business collected gasoline taxes which were not paid over to the State; that neither did a receiver, appointed for the business, pay the taxes, but that upon demand they were paid by the Surety Company, as it was obliged to do under the terms of the bond, and that therefore Mrs. Westgate became indebted to the plaintiff, for the amount so paid.

Counts 2 and 3 made substantially the same averments with respect to payments upon two other bonds signed by N. (Nellie) Drake. Count 4 seeks a recovery for sums paid by the Surety Company; and count 5 for amounts paid by the Glen Falls Indemnity Company, assignor of plaintiff. These counts alleged that by virtue of a decree granting a divorce to Mrs. Westgate from Westgate each owned one-half of the business; that for the period above mentioned the business collected and retained the taxes due the State; that Mrs. Westgate as half owner was, at the expense of the State, unjustly enriched by such retention; that the Surety Company discharged its obligation under the bonds by paying over to the State the taxes due; that the State assigned all its right, title and interest against Mrs. Westgate to the Surety Company, which thereby became subrogated to the right, title and interest of the State against Mrs. Westgate and that upon demand she had refused to pay the Surety Company the amount paid by it to the State. Count 5 contains substantially the same averments as those contained in count 4 except that the Surety Company sues as the assignee of the Glen Falls In-

demnity Company which was in turn the assignee of the State.

The case was tried by the court without the intervention of a jury. At the close of the Surety Company's evidence and at the close of all the evidence, the court denied Mrs. Westgate's motion for judgment, filed findings of fact and conclusions of law and rendered judgment in the Surety Company's favor in the amount of $9,785.-64 with interest, being one-half of the amount paid by it. The court found for Mrs. Westgate upon counts 1, 2 and 3, hence this appeal by Mrs. Westgate and counter-appeal by the Surety Company.

The findings of fact[1] are not clearly erroneous and we must therefore accept them as the facts of the case. Two or

---

1 "2. On December 1, 1938, Howard K. Drake and Nellie Drake made separate applications to the plaintiff company and its assignor, The Glen Falls Indemnity Company, for bonds to be furnished to the State of Michigan in connection with the wholesale gasoline businesses being operated in the State of Michigan by the said Howard K. Drake and Nellie Drake. They set forth in their applications the business being done by them as individuals, listing assets, referring to no other person as being a co-partner, and agreeing to indemnify the bonding company whose bond was being applied for against any loss by reason of the issuance of said bond. These applications were signed by Howard K. Drake and Nellie Drake, respectively, as individuals and were under seal.

"3. The applications of Howard K. Drake and Nellie Drake for surety bonds listed total combined assets of $168,360.-79.

"4. Under the provisions of the gasoline tax of the State of Michigan, Act No. 150, Public Acts of 1927, as amended, Michigan Statutes Annotated 7.291 and following, it is provided in Section 7.298(1) that the tax moneys so collected by the wholesale distributor shall be held in trust in a separate account and fund by such wholesale distributor, for the sole use and benefit of the State of Michigan until paid over to the Secretary of State, as provided for in the Act. This provision both of the Drakes failed to comply with. The moneys collected as a gasoline tax were comingled with the general funds of the wholesale business indiscriminately and without being earmarked in any way.

"5. Pursuant to, and in reliance on, said applications, plaintiff and its assignor issued surety bonds for a period which included January 1, 1939, to February 5, 1939.

"6. At the time the applications were made and the bonds were issued, the properties known as Direct Refineries Stations, and the bulk of the assets listed in the applications for surety bonds, belonged, in fact, one-half to Elmore L. Westgate and one-half to Bertha L. Westgate, the defendant herein, which

fact was unknown to plaintiff and its assignor.

"7. The wholesale businesses which the Drakes were operating were conducted in connection with a business originally started by Elmore L. Westgate, the husband of defendant and operated generally under the name of the Direct Refinery Stations. On August 10, 1937, Mrs. Westgate commenced suit for divorce against Elmore L. Westgate, and on November 30, 1938, a decree of divorce was granted to her, and in that decree the following provision was made for permanent alimony:

" 'And it is further ordered, adjudged and decreed, that as permanent alimony, the plaintiff shall have and own one-half of the defendant's title and interest in and to all of the properties, moneys, bank accounts, assets and business known as the Direct Refinery Stations as of August 10, 1937, and subsequent thereto, whether or not said business has continued to be and is now operated under that name, and in the wholesale gasoline business operated in connection with said Direct Refinery Stations or their successors, and having its business headquarters at 1319 South Division Avenue, and a one-half interest in any and all other property and rights held and owned by defendant and which remain undisclosed upon this hearing. Based on her said ownership and interest, plaintiff shall have the right to inaugurate and prosecute such proceeding or proceedings as may be appropriate and necessary for the determination, protection, enforcement and realization of her said rights in said property and business.'

"8. During the month of January and the first five days of February in 1939, deliveries of gasoline were made to the Direct Refineries Company from which a gasoline tax was computed and allowed as a claim in favor of the State of Michigan in the amount of $17,027.80.

"9. On or about February 5, 1939, on application by Bertha L. Westgate, a receiver was appointed who took charge and possession of all of the assets of the Direct Refineries Stations, including the bulk of the assets listed in the applica-

three additional undisputed facts will be referred to in the course of this opinion.

■ Upon a consideration of the facts found, we think that the judgment against Mrs. Westgate was erroneous and that upon her motion she was entitled to a judgment in her favor.

The gravamen of the Surety Company's suit as set forth in counts 4 and 5 is that Mrs. Westgate was unjustly enriched at the expense of the State; that its cause of action for unjust enrichment was assigned to the Surety Company and that Mrs. Westgate was therefore required to make restitution to the Surety Company.

■ "Unjust enrichment" as a cause of action falls under indebitatus assumpsit. It is grounded in the equitable principle that one who has been unjustly enriched at the expense of another is required to make restitution. See the enlightening and exhaustive discussion of the subject in Herrmann v. Gleason, 6 Cir., 126 F.2d 936, 939. There we said, "This action, while legal in form, is equitable to the core."

On November 30, 1938, a Michigan chancery court granted Mrs. Westgate a divorce from Westgate and decreed to her a one-half interest in all the properties and business of the Direct Refineries Sta-

tions for surety bonds, and said receiver has since continued in possession of and management of said assets, under the direction of the Circuit Court for the County of Kent and State of Michigan.

"10. Said Howard K. Drake and Nellie Drake did not own or operate any other gasoline or oil business at the time the applications were made and the bonds issued, except the properties known as Direct Refineries Stations, all of which were included in the assets which were turned over to said receiver.

"11. The defendant, Bertha L. Westgate, has commenced various actions and suits to establish her ownership in and right to the various properties known as Direct Refineries Stations, including the properties ostensibly owned and operated by the said Howard K. Drake and Nellie Drake. She has received and accepted, and continues to receive and accept, the sum of $100.00 per month out of the assets aforementioned. At the present time, and with knowledge of all the material facts involved, she still asserts her right to receive one-half of all the assets including the income and profits from said business.

"12. The receiver did not pay the state's claim for gasoline taxes in the amount of $17,027.50, and the state made demand upon plaintiff and its assignor, as surety, and plaintiff and its assignor were compelled to pay to the State of Michigan the sum of $19,561.28 which is the amount of said claim plus penalty and interest.

"13. Upon receipt of said money, the State of Michigan assigned to the plaintiff and its assignor bonding company any and all rights that it might have against the receivership for the Direct Refinery Stations business, against Howard K. Drake, Nellie Drake, Elmore L. Westgate, or any other person.

"14. In the case of Westgate v. Westgate, 305 Mich. 423, 433, 9 N.W.2d 661,

664, the liability of defendant herein for these taxes was discussed as follows:

"'The statute, 1 Comp.Laws 1929, § 3583, as amended by Act No. 166, Pub. Acts 1935 (Comp.Laws Supp.1940, § 3583, Stat.Ann. § 7.298), imposes the duty on a wholesale dealer in gasoline to pay to the secretary of state 3 cents on each gallon of gasoline. We are dealing with equitable principles in the trial de novo. Although the payment of this tax was a personal obligation of the wholesale dealer, in this instance Westgate acted through the Drakes, and notwithstanding the bonds which the Drakes gave to the State, under the theory of unjust enrichment it is equitable that any deficiency remaining after the State has exhausted its remedies against Westgate, the Drakes, their sureties, and the receiver, should be charged against Mrs. Westgate's interest. Otherwise, Mrs. Westgate's share would be enhanced by moneys collected for, and not remitted to, the State. To this extent the decree must be modified.'

"In accordance with this opinion a decree was entered by the Supreme Court, which reads in part as follows:

"'It is now ordered, adjudged and decreed by the Court, that the decree of the Circuit Court for the County of Kent, in Chancery, be, and the same is hereby affirmed, except that after the State of Michigan shall have exhausted its remedies against Elmore L. Westgate, Howard K. Drake, Nellie Drake, their sureties and the Receiver, in its efforts to collect the gasoline tax owing to the State in the amount of Seventeen thousand twenty-seven and 50/100 Dollars ($17,027.50), any deficiency which may still remain uncollected shall be chargeable against the interest of Bertha L. Westgate in the Direct Refinery Stations business, its assets, and the income.'"

tions as permanent alimony. But the court recognized that on account of the widespread ramifications of the business the decree, standing alone, was wholly inadequate. It therefore granted supplemental relief, to wit: "Based on her said ownership and interest, plaintiff shall have the right to inaugurate and prosecute such proceeding or proceedings as may be appropriate and necessary for the determination, protection, enforcement and realization of her said rights in said property and business."

Relying upon this decree, Mrs. Westgate, on February 5, 1939, sought and was granted a receivership of all the assets of the Direct Refineries Stations. The receiver took possession of the assets in so far as he could locate and discover them and has since continued in the control and management thereof under the direction of the court. Between the date of the divorce decree and the appointment of a receiver, to wit, in January and February, 1939, Howard K. and Nellie Drake were in the possession, management and control of the Refineries Stations business under the direction of Westgate, and during this period collected, retained and commingled with the general funds of the business gasoline taxes due the State in the amount of $17,-027.80. The receiver declined to pay the State's claim for this amount.

If we should undertake a review of the very large number of miscellaneous matters that have had the consideration of both the Circuit and Supreme Courts of Michigan growing out of the divorce decree, we would confuse rather than clarify the questions presented here. It is enough to say that, with all the interested parties except the Surety Company before the court, the Supreme Court handed down the opinion and entered the decree, both of which were quoted from in the findings of fact.

The Supreme Court considered and determined the identical question presented here, i.e., whether Mrs. Westgate's interest in the Direct Refineries Stations business would be enhanced by the taxes collected by the Drakes and unremitted to the State. It held that in equity Mrs. Westgate's interest should be charged only with any deficiencies remaining after the State had exhausted its remedies against Westgate, the Drakes, their sureties and the receiver.

Its decree was res adjudicata as between the State and Mrs. Westgate. We think that it was likewise res adjudicata between the Surety Company and Mrs. Westgate. It is a commonly accepted principle that where an assignor is precluded by judgment his assignee will also be precluded. It is an equitable maxim that "he who takes the place of another as to any right or property holds it subject to all the rights of the assignor." See Tillman v. National City Bank of New York, 2 Cir., 118 F.2d 631, 633.

We think it clear enough under the decree of the Supreme Court of Michigan that the Surety Company, as between itself and Mrs. Westgate, was compelled to exhaust its remedies against Westgate, the Drakes and the receiver. It would probably have been futile to have proceeded against Westgate and the Drakes for apparently they were each insolvent, but there is no evidence that the Surety Company exhausted its remedies against the receiver, who, judging from the record, obviously had sufficient assets to discharge its claim; at least there is no evidence that it did not have such assets. These assets are still in the possession and under the control of the State court through its receiver and none of them have been distributed to Mrs. Westgate except the sum of $100 per month since the 5th day of November, 1939.

It is obviously inequitable to burden Mrs. Westgate with a personal judgment for $9,785.64 with interest or for any other amount upon this state of the record. Mrs. Westgate has not received or realized any pecuniary benefits from that decree except the monthly payments which she received as distribution of receivership assets. Her interest is wholly under the control and management of the Michigan court, and the amount, if anything, by which she will be finally benefited, depends entirely upon the settlement of the receivership and the distribution of assets by the court itself. The order appointing the receiver makes this self-evident.

In Herrmann v. Gleason, supra, 126 F.2d at page 940, we said: "The essential elements of a quasi contractual obligation, upon which a recovery may be had, are the receipt of a benefit by a defendant from a plaintiff, which benefit it is inequitable that the defendant retain."

We can say no more here. We think in all good conscience the Surety Company is not entitled to recover at this time.

182

We find no evidence even that the monthly distributions to Mrs. Westgate are unjustly held by her. There is no evidence that the assets still in the receiver's hands will upon the settlement of his accounts be insufficient to satisfy any amount to which the Surety Company might be entitled.

The findings on the cross-appeal are set forth under finding No. 2. We have examined these findings in connection with the evidence, and they are substantially correct. There is no evidence that Mrs. Westgate had any connection with placing the Drakes in the management and control of the Direct Refineries Stations business, or that she expressly or impliedly ratified the obligation of the Drakes, found in their applications for the bonds, to indemnify the Surety Company from loss. The conclusion of law found in paragraph 1 that the Surety Company was not entitled to recover under counts 1, 2 or 3 for the reason that no evidence warrants the conclusion that there was either express or implied ratification of the agreement of the Drakes to indemnify it or its assignor for losses incurred in connection with the operations covered by the surety bonds, is correct. There is no judgment entry dismissing the case upon counts 1, 2 and 3 of the complaint, but Mrs. Westgate is entitled to such judgment.

The order of this court is, that the judgment appealed from by Mrs. Westgate be and the same is reversed and the entire case remanded for entry of judgment dismissing the action.