**UNITED STATES of America, Plaintiff,**

v.

**Gilbert Edward MARTIN, d/b/a Pioneer Graphic Arts, and Geraldine Theresa Aubert Martin, his wife, jointly and severally, Defendants.**

**Civ. A. No. 34980.**

United States District Court, E. D. Michigan, S. D. March 1, 1972.

Robert A. Rosenberg, Detroit, Mich., for plaintiff.

Albert H. Zlatkin, Neighborhood Legal Aid, Detroit, Mich., for defendants.

## MEMORANDUM OF DECISION

KEITH, District Judge.

### I. STATEMENT OF FACTS

This is an action instituted by the United States of America on behalf of the Small Business Administration (SBA) to recover moneys loaned to Defendants pursuant to the Equal Opportunity loan program. The loans (totalling $27,500) were disbursed and administered by the Bank of New Orleans, an SBA participant bank.

Initially, Plaintiff sought to recover $25,000. Subsequently, at trial and in pretrial, it amended the Complaint to include a second loan for $2,500. Plaintiff's and Defendants' attorneys, as well as the Court, signed and approved the

Pretrial Order. And, in trial, the Court formally granted Plaintiff's Motion to Amend its original Complaint.

On February 26, 1969, the Bank of New Orleans, New Orleans, Louisiana, loaned Defendants Gilbert Edward Martin and his wife Geraldine Martin the sum of $25,000. Defendants agreed to repay the Bank at a rate of interest of 8 percent per annum in monthly installments of $326. The monthly payments were stated in the note to begin on a date one year from the date of the execution of the note. This note was guaranteed by the Small Business Administration (hereinafter called "SBA"), an Agency of Plaintiff.

Prior to February 26, 1970, the date on which Defendants' first payment was due, the New Orleans Bank assessed interest charges against Defendants. Plaintiff agrees that the assessment of these interest charges was a breach of the contract between the Bank and Gilbert Martin. However, it should also be noted that prior to February 26, 1970, Mr. Martin abandoned the collateral which secured the loan and moved from New Orleans to Detroit, Michigan.

As the result of a letter which Mr. Martin wrote to the President of the United States requesting that the SBA take over his total obligation, the SBA discounted the Martins' note and paid off on its guaranty agreement. Further, as the result of Mr. Martin's abandonment of his business the SBA placed Mr. Martin's note "in liquidation" on November 26, 1969.

On April 7, 1970, SBA forwarded a request for liquidation to the United States Attorney for the Eastern District of Louisiana. On May 20, 1970, unable to locate Mr. Martin in the State of Louisiana, the United States Attorney for the Eastern District of Louisiana forwarded the claim to the United States Attorney for this District requesting institution of litigation against Mr. and Mrs. Martin. On June 5, 1970, the Complaint was filed and summons issued. On July 16, 1970, Mr. and Mrs.

Martin filed their initial Answer to Plaintiff's Complaint. On December 15, 1970, Mr. and Mrs. Martin failed to appear for a preliminary pretrial conference. On February 9, 1971, Mr. Martin did appear at a preliminary pretrial conference and at the request of the Court was aided in securing an attorney from the Neighborhood Legal Services Center by the Office of the United States Attorney for the Eastern District of Michigan. At no time have Mr. and Mrs. Martin made any attempt to repay the loan which was given to them by the Bank and secured by the Government. The entire amount of the loan plus interest is still due and owing. Mr. and Mrs. Martin have made no voluntary payments in liquidation of their loan, and therefore pursuant to the acceleration clause in the contract, the entire amount of the debt is now due and payable.

## II. ISSUES PRESENTED

1. Was the clause in the promissory note regarding method of repayment of the loan which was given to defendants a condition precedent to defendants' liability on said note, breach of which would excuse defendants from repaying said loan?

2. May defendants raise as a defense the failure of a surety to a contract to require the creditor to seek redress from the principal debtor?

3. May defendants show that plaintiff should not have honored its Guaranty Agreement with the Bank for any reason, and if so, have defendants shown that plaintiff should not have honored its Guaranty Agreement?

4. Is the United States of America the proper party plaintiff?

5. Is it open to Defendants to assert that the Bank should be a party to this law suit and that if the Bank is not, suit may not be maintained against them?

6. Is Defendant Geraldine Martin not responsible for this indebtedness on the ground of coverture?

## III. DISCUSSION

■ Plaintiff proceeds under two separate recovery theories: contract default and money had and received. As early as Plaintiff's Motion for Summary Judgment, Defendants were advised of this approach. Plaintiff's theories were recognized in the Pretrial Order. Defendant, at trial, raised a legal defense to the assertion of the money had and received theory, despite the fact that his co-counsel had adequate notice of the Government's position and failed to raise an objection at any time prior to trial. Defendant contends that this theory of recovery cannot be asserted under Louisiana pleading procedure. However, Louisiana law in this case only applies to the construction of the contract, the use of parol evidence, and substantive features of the transaction. As far as the institution and maintenance of this action is concerned, Federal law governs. Hughes v. Kaiser Jeep Corp., 40 F.R.D. 89, 90 (D.S.C., 1966). See also Travelers Indemnity Co. v. United States, 382 F.2d 103 (C.A. 10, 1967), and Rule 15, F.R.Civ.P.

Briefly stated, Plaintiff's contract theory is that, pursuant to valid loan and mortgage agreement, defendants borrowed $27,500. They have failed to comply with various conditions in those agreements (e. g., maintaining and delivering insurance policies, keeping the property on the premises and paying rent). Defendants failed to make a single principal payment. Accordingly, the contract was breached and Plaintiff sues for recovery of the funds.

■ Plaintiff's second theory is "money had and received". Defendants received money, used that money, and now seek to avoid repayment. The theory of money had and received, or unjust enrichment, is well recognized under the law of Louisiana. Johnson v. Mansfield Hardwood Lumber Co., 143 F.Supp. 826, 841–843 (W.D.La.1956), aff'd 242

F.2d 45 (C.A.5, 1957). Compare, Westgate v. Maryland Casualty Co., 147 F.2d 177 (C.A.6, 1945). See also Avant v. United States, 165 F.Supp. 802 (E.D.Va., 1958), in which the Court held that one cannot repudiate his contract and then take advantage of it, disposing for his own benefit of property or money he has received. One is not entitled to enrich himself in that manner. This reasoning clearly applies to the case at bar.

■ The Defendants claim that the deduction of interest vitiated the contract and that they should be able to keep the chattels. The Court finds however that the 12-month moratorium was not a contractual condition under Louisiana law, but rather one of the terms of the contract. As a result, violation of this term (if, indeed, one occurred without consent and with protest) does not provide grounds for breach or suspension of the engagement of the contract. The only effect is a retardation or postponement of the execution of the contract. The contract would remain in force.

■ Plaintiff also contends that Defendant Gilbert Martin knew of the interest deduction arrangement and agreed to it. Defendant denies this. Plaintiff points *inter alia* to the testimony and exhibits contained in the Allen Houk deposition. Mr. Houk, at pages 6, 8, 9, 10, 12, 21, 28, 32, 40 and 42 of the deposition, testified that Mr. Martin knew of the arrangement beforehand and acceded to the deductions. The Defendant was told about the Bank policy and Louisiana law.

Mr. Houk testified (p. 13) that after 90 days of operation the Defendant had used up all of his working capital and was unable to pay the rent. Mr. Martin wrote to the New Orleans bank, thanking them and stating he was misled by a local voluntary group. Mr. Houk (p. 24) noted business difficulties and possible contractual breaches of Defendants. He also discussed an eviction notice (p. 25).

On cross-examination, he testified (p. 28) that " . . . the purpose of an

**354**

interest moratorium was never discussed in that he and I (Houk) agreed from the start that interest would be deducted monthly." And, at pp. 40–41, " . . . we agreed rather than redo all of these papers, he would pay us interest monthly".

The evidence supports a conclusion and the Court so finds, that Defendants never protested, and that they agreed to take the money and pay interest, but under-budgeted and overspent the funds.

## IV. FINDINGS OF FACT

Based upon the Pretrial Order, admissions of the parties and the evidence adduced at trial, the following facts are specifically found:

1. Defendants executed two promissory notes, one for $25,000 and the other for $2,500, along with corresponding chattel mortgages and in return were loaned or credited with the funds.

2. Both notes were guaranteed by the SBA.

3. Among the terms contained in the notes was one for a 12-month moratorium on interest and principal.

4. Prior to the expiration of one year, the Bank deducted, or attempted to deduct, various sums for Defendants' account to apply towards interest payments.

5. Subsequent to the deductions, which lasted for less than six months, Defendants failed to make one principal payment.

6. The total amount of interest deducted against the $25,000 loan was $694.00.

7. Among the terms or conditions of the loan and chattel mortgage were:

(a) Hazard insurance was to be procured and delivered by the Defendants.

(b) Proceeds of the loan were to be used only according to SBA approval.

(c) Property was to be kept at 2100 N. Claiborne Avenue, in New Orleans, and not moved without permission.

(d) The mortgaged premises were not to be abandoned.

(e) No property was to be transferred.

(f) The Mortgagee was authorized to expend funds for expenses deemed necessary for the full protection and preservation of the mortgage (e. g., rent arrearages).

8. The Defendants in one way or another breached all of the above conditions, some as early as the first week of the loan.

9. Mr. Martin, in a letter to the President, admitted being obligated to the SBA for $27,500.

10. Mr. Martin admitted to a history of poor business judgment and planning.

11. The $25,000 was fully spent by Mr. Martin within three months of receipt and no reserve was maintained for necessary items (e. g. insurance payments) or eventualities (difficulties in securing a cash flow).

12. Within the initial year of the loan, and after the second loan failed to bring about a change, the loan was put into the "liquidation status" designation, as Defendants had not complied with the conditions of the loan agreement and chattel mortgage (See Finding 7, *supra*). Subsequently, Defendants, who still held the chattels, failed to make the initial principal payment.

13. Mr. Martin, at about the time of the second loan, secured employment in Detroit, and left his wife in New Orleans to run the business, which supposedly consisted of his expertise.

14. The United States of America, being unable to institute an action in New Orleans, did so in Detroit, asking, in effect, that it be paid back the money and the parties put in their original position.

## V. CONCLUSIONS OF LAW

Issue No. 7: The clause in the promissory note regarding method of repayment of the loan which was given to defendants was not a condition precedent to defendants' liability on said note breach of which would excuse defendants from repaying said loan.

■ Since the contract involved in the case at bar is a contract made pursuant to a loan given in the State of Louisiana with all of the activity pursuant to that contract contemplated to occur in the State of Louisiana construction of the contract must be done in accordance with Louisiana law. United States v. Yazell, 382 U.S. 341, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966).

Basically, Defendants claim that the attempts by Plaintiff's assignor, the Bank of New Orleans, to collect interest due prior to the time the first payment on the note was due excused Defendants from repaying the loan which had been given to them. In order for Defendants' argument to stand, they must show that the clause in the promissory note reading:

"payment to be made in installment as follows: $326, including principle and interest, payable monthly, beginning twelve (12) months from the date hereof, and $326 on the same date of each succeeding calendar month thereafter until paid in full, provided that all principle and interest not sooner paid shall become due and payable ten (10) years from the date hereof, and each said installment payment, when received, shall be applied by the holder hereof, first to interest accrued to the date of receipt of said payment, and the balance, if any, on account of the principle hereof."

was a condition precedent to their liability to make repayment of the loan.

In the case of Pringle Associated Mortgage Corporation v. Eanes, La.App., 211 So.2d 399, aff'd 252 La. 887, 214 So. 2d 715, the Court noted the applicable Louisiana law at p. 403:

"Art. 2048. The time given or limited for the performance of an obligation, is called its term.

"Art. 2049. A term may not only consist of a determinate lapse of time, but also of an event, provided that event be in the course of nature, certain; if it be uncertain, it forms a condition.

"Art. 2051. The term differs from the condition, inasmuch as it does not suspend the engagement, but only retards its execution."

Under *Pringle,* and the definition contained therein, the 12-month moratorium was a term for performance and not a condition capable of inducing a contractual breach. The Defendants, at most, under the state law, would have a defense of prematurity and not of breach. Their obligations under the agreements continued to exist. See also Johnson v. Bell, 2 La. 258 (1831); Hardin v. Mutual Life Insurance Company of New York, 12 So.2d 488, 490 (La.App.1943); Yerger v. Simmons, 136 La. 280, 67 So.2d 3 (1950); Metal Building Products Co., Inc. v. Fidelity and Deposit Company of Maryland, 144 So.2d 751 (La.App.1962); Schexnayder v. Capital Riverside Acres, 170 La. 714, 129 So. 139 (1930). The Defendants may not excuse themselves from repayment of the debt by citing this alleged breach of a covenant.

Issue No. 2: Defendants may not raise as a defense the failure of a surety to a contract to require the creditor to seek redress from the principal debtor.

■ Defendants claim that because of the Bank's alleged breach of contract the SBA should not have paid off on its guaranty agreement. Apparently, Defendants' theory is that the breach of contract by the Bank of New Orleans was available as a defense by the SBA and that the SBA was required to insist that the Bank seek its redress against the Defendants.

Basically, the claim which Defendants raise is of setoff or counterclaim. It is almost universally recognized that, unless permitted by statute, a surety may not avail himself of the claim of the principal against the creditor where he has no interest in the claim. United States, for Use & Benefit of Johnson v. Morley Construction Co., 11 F.Supp. 841 (W.D.N.Y.1935); United States to Use of Stainless, Inc. v. P. J. Walker Construction Co., 24 F.R.D. 136 (S.D.Cal. 1959); Miracle Mile Shopping Center v. National Union Indemnity Co., 299 F.2d 780 (C.A. 7, 1962); Saxis Steamship Co. v. Multifacs International Traders, Inc.,

375 F.2d 577 (C.A. 2, 1967); In re Yale Express System, Inc., 362 F.2d 111 (C.A. 2, 1966).

■ It is likewise clear under Louisiana law that a surety, when sued, may himself sue the principal for indemnification but the surety cannot require the creditor to sue the principal. Continental Supply Co. v. Fisher Oil Co., 150 La. 890, 91 So. 287 (1922).

Therefore, it is clear that the Defendants may not claim that the SBA was in error in honoring its surety contract since the SBA could not have raised the defenses which the Martins claim should have been raised in this case.

■ Even if Plaintiff should not have honored the guaranty agreement, Defendants cannot raise this defense. This agreement was between the bank and the SBA and created no right in the Defendants. As recognized in United States v. Fay T. Garner, et al., Civil No. 67–C–48 (D.Colo.1968), "The Participation Agreement . . . was clearly an agreement between the (Weld County) Bank and the Small Business Administration for their mutual benefit and created no legal rights or duties in the Defendants. The Defendants are not parties to the Agreement, nor are they third-party beneficiaries of the Agreement."

Issue No. 3: It is not open to Defendants to show that for any of the reasons suggested Plaintiff should not have honored its Guaranty Agreement with the Bank. Even were it open to Defendants to do so, they have not done so.

See Issue No. 2, *supra* for a discussion of the legal principles here involved.

■ Issue No. 4: The United States of America is the proper party Plaintiff. SBA v. McClellan, 364 U.S. 446, 81 S.Ct. 191, 5 L.Ed.2d 200 (1960).

Issue No. 5: It is not open to the defense to assert that since the Bank is not a party to this lawsuit they may not be sued.

■ It is not a proper defense to say the Bank should be a party and is

not. The Defendants chose to move away from New Orleans. Because of their own action, they cannot join the Bank here. Had they remained in Louisiana, they might have joined the Bank and claimed against them in a third party action. The fact they cannot do so now should not give rise to the defense that the Bank is the proper party to sue or be sued. The Bank is not a necessary party to this action.

Issue No. 6: Coverture is no defense in this case for Defendant Geraldine Martin.

■ The Defendant, Mrs. Geraldine Martin, has also raised the defense that she is not responsible for this indebtedness because of the fact that she is a married woman, citing the law of coverture as the basis for this defense. United States v. Helz, 314 F.2d 301 (C.A. 6, 1963) holds that, under Federal law, a wife, sued by the United States for the balance due on a note executed by the wife and her husband, could not assert the defense of coverture. The Court ruled that in cases arising under Federal statutes or in cases affecting Government money and the credit of the Government, remedies are governed by the directives of the Federal statutes, or, if no directive exists, then by rules fashioned by the Federal courts. See also United States v. View Crest Garden Apartments, 268 F.2d 380 (C.A. 9, 1959), certiorari denied 361 U.S. 884, 80 S.Ct. 156, 4 L.Ed.2d 120.

## CONCLUSION

A loan from the Federal Government, by virtue of the SBA's bank participation program, is a Federal matter and should be governed by Federal law, except to the extent the State's substantive contract law is concerned.

Defendants in the case at bar have advanced no reason why the loss involved in this case should fall upon the public.

Judgment will be entered for the United States as proposed.